**EASTERN OHIO DISTRIBUTING COMPANY,**
**Plaintiff-Appellee, v. BOARD OF LIQUOR CONTROL et,**
**Defendants-Appellants.**

Ohio Appeals, Second District, Franklin County.

No. 4459. Decided August 23, 1950.

Matz & Cinque, Bellaire, Isadore Topper, Columbus, for plaintiff-appellee.

Hon. Herbert S. Duffy, Atty. Genl., Charles T. Kaps, Asst. Atty. Genl., Columbus, for defendants-appellants.

## OPINION

By THE COURT.

This is an appeal on questions of law from a judgment of the Court of Common Pleas reversing an order of the Board of Liquor Control and directing the Board to issue a permit to the applicant.

The grounds for the reversal were that the order was not supported by "competent, substantial and admissible evidence in the record, is not supported by any evidence, is contrary to the manifest weight of the evidence and is contrary to law."

It appears that the application of plaintiff-corporation for a Class B-1 permit had been rejected by the Director of the Department of Liquor Control, that it appealed the rejection to the Board of Liquor Control which, in its decision divided, two members supporting the action of the Director and two voting to reverse and to issue the permit.

The Board in support of its order refusing the permit gave six reasons for its action. The first is that Vusky is the president of the applicant corporation and the principal stockholder thereof holding 240 of the 250 outstanding shares of stock of the company. This finding is in accord with the record and, in our judgment, was sufficient showing that Vusky would control completely the operations and activities of the applicant corporation and if it further appeared that he was an unfit person to be granted the permit applied for would afford sufficient support for the action of the Board in refusing the permit to the corporation.

The second, third and fourth findings relate to establishments located in Bellaire, Ohio, and Bridgeport, Ohio. These findings are to the effect that Vusky had prior to and was at the time of the application for the permit connected with the operations of such establishments which were gambling or "bookie" houses; that prior to January 1, 1950, he had been the owner and operator of such establishments and since that date retained his financial interest in these illegal businesses.

The fifth finding is that,

"There is a substantial likelihood that subject applicant, would, if granted a Class B-1 permit, utilize the privileges of such permit for the purpose of promoting and diversifying his gambling activities in that said Vusky and his associates have demonstrated a willingness and a desire to engage in such gambling activities and it is well known that persons who make a business of such activities seek linkage with retail permit holders where possible as a preferred method of conducting their gambling operations. * * *"

The sixth finding is to the effect that the distributorship of Miller's High Life Beer which the applicant proposed to distribute had been obtained without full disclosure and by imposition upon the brewer of said beer.

Appellee cites §6064-17 GC for the proposition that neither the corporation nor Mr. Vusky is in the class to which a permit may not be issued. This must be granted but it does not follow that because they are eligible to receive a permit,

the Board has no power to determine that they should not be granted such permit. The section is nothing more than a limitation as to eligibility.

Without respect to any possible finding which the Board may have made that would have supported its action it is evident from the second, third and fourth findings that the basis upon which it did act was that **at the time the application for permit was made,** Vusky was connected with the gambling enterprises in Bellaire and Bridgeport.

There has been considerable observation about the liberality of procedure in hearings before the Liquor Board, that it is not bound by the strict rules of evidence and that it has wide latitude in the conduct of its hearings. We grant that the Board should not, in all particulars, be restricted in the conduct of its hearings as closely as courts of law but being vested with the power to make decisions and orders upon issues vital to applicants for, and holders of permits it should not act upon evidence which is not admissible, competent or probative of the facts which it is to determine.

Careful reading of the record in this case is convincing that had Mr. Vusky not taken the stand there was an utter failure of competent proof that he was not qualified to receive the permit for which application had been made. However, he did take the stand. He admitted that prior to January 1, 1950, he had been connected financially with and shared the profits of the gambling establishments at Bellaire and Bridgeport; admitted that since that time he had paid for some of the utilities in one or both of these establishments. The record is not clear that he admitted that he had paid the rental for these places. He stated that he had, prior to his application for a permit and as early as August, 1949, agreed with his wife to whom he was newly married, to sever all of his connections with the gambling houses and that pursuant to his promise he had prior to January 1, 1950, abandoned all connection with gambling.

Over the objection of Mr. Vusky's counsel, the Board permitted one of its investigators, Carson Davis, at page 6 of the record, to say, among other things, that he contacted Mayor Brighton of Bridgeport and that **he said:**

"It was common knowledge Andy Vusky was connected with the Bridgeport bookie,"

and further that he had contacted Mr. Sanders, Mayor of Bellaire, and **he said:**

"It seems very common knowledge that Andy Vusky was connected with the bookie and further investigating I checked the utilities of both locations in Bridgeport and Bellaire and the utilities are paid by Mr. Vusky **and the rent for the buildings are paid for by Mr. Vusky.**"

And particularly at page 11 the witness said:

"I was interested in finding out who paid for the wire service to this establishment. He (Mr. Cole) told me it was paid **for by Mr. Vusky.**"

Continuing,

"Then to further check that we sent a man in to Steubenville. I found that the fellow who puts out the wire service says it is paid for by Mr. Vusky by two front men. He gave me the names. I have them here."

This testimony was not only hearsay but the last answer was twice removed from the source of information. The record is replete with incompetent hearsay testimony. Much of it becomes inconsequential because of the admissions of Mr. Vusky but it is apparent that the Board acted upon the conclusion that Mr. Vusky was at the time of the application connected with the gambling establishments. It was not proper for the Board to so conclude upon testimony much of which it should not have heard and it is impossible to say that this incompetent testimony was not the determinative factor in the order finally made.

We cannot hold as a matter of law that the Board had no right to believe the incriminating statements of Mr. Vusky and to disbelieve his statements which supported his contention. However, it is manifest that this testimony should have been weighed unaffected by the incompetent and highly prejudicial statements on the subject which had been admitted by the Board. Had the Board accepted the competent testimony only on the subject upon which it based its order it may be that it would have concluded that Mr. Vusky was telling the truth and that he had no connection whatever with gambling at the time of the hearing and that he had had none since January 1, 1950.

We make some observation respecting affidavits and letters on behalf of Mr. Vusky which were admitted by the Board at its hearing. It is indeed seldom that an individual can bring to his aid such an array of men of prominence in the community which is to be affected by the operation of Mr.

Vusky under the permit if granted. Among these recommendations were letters from Hon. John C. Nichols, Judge of the Court of Appeals of the Seventh District, Hon. Clifford L. Belt, Judge of the Court of Common Pleas of Belmont County, Hon. Harry L. Albright, Judge of the Probate Court of Belmont County, Hon. Arthur Blake, State Senator of Belmont County District, Hon. Cloyd L. Barriclow, Sheriff of Belmont County, Hon. John J. Saunders, Mayor of the City of Bellaire, Hon. George T. Brighton, Mayor of Bridgeport, Hon. John Malik, City Solicitor of Bellaire, Hon. W. T. McCort, County Auditor, Belmont County, Hon. Lawrence W. Purdy; County Recorder, Belmont, O. A. Holsinger, Vice President of the Bridgeport National Bank, and others. Most of these men are directly connected with the enforcement of law and all of them are fully cognizant of the nature and requirements of the business which Mr. Vusky would conduct were his company granted a permit. All of them recommended him favorably and most of them request the Board to issue the permit.

It further appeared that Mr. Vusky was a business man of substance, that he had formerly been successfully engaged in the taxicab business and had under permit of the Liquor Board operated a night club in the vicinity of Bellaire and that all of these ventures had been conducted on a high plane without violations of law and with general approval.

We readily concede that if the Board had competent evidence from which it could reasonably determine that Mr. Vusky was, when he applied for the permit, connected with gambling enterprises these letters and affidavits, notwithstanding the eminence of the citizens who provided them, could not avail to require the issuance of the permit. However, if the Board should conclude that Mr. Vusky was no longer associated in the gambling enterprises the recommendations heretofore mentioned and his favorable business experience are most convincing that he is a suitable person to whom a permit should be granted.

Upon the record as it comes to us we cannot say that there was no support whatever for the order of the Board and to that extent the judgment of the Common Pleas Court must be reversed. However, we are satisfied that the Board acted upon incompetent testimony and that its order based upon the consideration, in part, of such testimony was an abuse of discretion to the prejudice of the applicant.

The cause will be remanded to the Board of Liquor Control for further hearing upon the appeal from the Director of the Department.

MILLER, PJ, HORNBECK and WISEMAN, JJ, concur.