OPINION
{¶ 1} Appellant, James E. Althof, Ph.D., appeals from a judgment of the Franklin County Court of Common Pleas that, among other things, affirmed an order of the Ohio State Board of Psychology ("board") revoking appellant's license to practice psychology for a minimum of five years. Because the common pleas court did not abuse its discretion by affirming the board's order, we affirm the common pleas court's judgment.
 {¶ 2} By means of a notice of opportunity for hearing, the board informed appellant that it intended to determine whether to reprimand appellant, or suspend or *Page 2 
revoke appellant's license to practice psychology for, among other things: allegedly engaging in sexual intercourse with several female clients; impaired objectivity and dual relationships; exploiting the trust or dependency of clients; negligence; improper billing; engaging in fraud, misrepresentation, or deception; and failing to protect client confidentiality.
 {¶ 3} After holding an administrative hearing, the board revoked appellant's license to practice psychology for a minimum of five years, effective November 19, 2004. The board also ordered that, in the event that circumstances warranted restoration of appellant's psychology license, appellant's return to practice "shall be accompanied by a restriction from providing psychological services to females in perpetuity and that practice monitoring by a Board-approved mental health professional shall be required in perpetuity." (Oct. 21, 2004 Order.)
 {¶ 4} From the board's order, appellant appealed to the Franklin County Court of Common Pleas. The common pleas court stayed execution of the board's order pending resolution of the merits of appellant's appeal. Later, the common pleas court issued a judgment affirming the board's order of revocation. In its judgment, the common pleas court also vacated its earlier stay of execution of the board's order.
 {¶ 5} Following the common pleas court's judgment, appellant moved the court to clarify its order vacating the stay of execution of the board's order. The common pleas court did not rule upon this motion. We, therefore, presume that the common pleas court overruled appellant's motion. See, generally, Kostelnik v. Helper, 96 Ohio St.3d 1,2002-Ohio-2985, at ¶ 13, reconsideration denied, 96 Ohio St.3d 1489, citing State ex rel. v. Cos. V. Marshall (1998), 81 Ohio St.3d 467, 469
(stating that "[a] motion not expressly decided *Page 3 
by a trial court when the case is concluded is ordinarily presumed to have been overruled").
 {¶ 6} From the common pleas court's judgment, appellant now appeals. On July 6, 2006, after appellant's appeal was submitted to this court, appellant moved this court to stay the effect of the board's order. By entry filed on August 2, 2006, this court suspended execution of the board's revocation order. Appellant has assigned ten errors for our consideration:
 ASSIGNMENT OF ERROR NO. 1
 The trial court erred in finding that participation of "patient advocates" in the adjudicative hearing was consistent with due process.
 ASSIGNMENT OF ERROR NO. 2
 The trial court erred in finding that the Board's failure to enforce its own subpoena duces tecum was consistent with due process.
 ASSIGNMENT OF ERROR NO. 3
 The trial court erred in finding that the Board's ex parte conversation with the Assistant Attorney General was consistent with due process.
 ASSIGNMENT OF ERROR NO. 4
 The trial court erred in finding that testimony relating to Appellant's temperament and behavior was properly admitted.
 ASSIGNMENT OF ERROR NO. 5
 The trial court erred in finding that Dr. Jane Woodrow's participation in the hearing was consistent with due process.
 ASSIGNMENT OF ERROR NO. 6 *Page 4 
 The trial court erred in finding that R.C. 2305.51 does not provide immunity to Appellant.
 ASSIGNMENT OF ERROR NO. 7
 The trial court erred in finding that the Board's decision to allow a witness to read from a journal containing hearsay was proper.
 ASSIGNMENT OF ERROR NO. 8
 The trial court erred in finding that the Board's failure to give explicit prior notice did not deny Appellant his due process rights to reasonable notice and fair hearing.
 ASSIGNMENT OF ERROR NO. 9 The trial court erred in lifting the stay of Appellant's suspension.
 ASSIGNMENT OF ERROR NO. 10
 The trial court erred and abused its discretion in finding that the Board's Order was based on reliable, probative and substantial evidence.
 {¶ 7} Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, it must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law.Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 110-111;Andrews v. Bd. of Liquor Control (1955), 164 Ohio St. 275, 280. See, also, Our Place, Inc. v. Ohio Liquor Control Comm. (1992),63 Ohio St.3d 570, 571 (defining reliable, probative, and substantial evidence).
 {¶ 8} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative *Page 5 
character of the evidence, and the weight thereof.'" Lies v. OhioVeterinary Med. Bd. (1981), 2 Ohio App.3d 204, 207, quotingAndrews, at 280. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive.Conrad, at 111.
 {¶ 9} An appellate court's review of an administrative decision is more limited than that of a common pleas court. Pons v. Ohio State Med.Bd. (1993), 66 Ohio St.3d 619, 621, rehearing denied,67 Ohio St.3d 1439. In Pons, the Supreme Court of Ohio explained:
 * * * While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment. * * *
Id. at 621. See, also, Smith v. State Liquor Control Comm. (Dec. 10, 1998), Athens App. No. 98CA03, at fn. 1 (stating that in Brown v. OhioBur. of Emp. Servs. [1994], 70 Ohio St.3d 1, reconsideration denied,70 Ohio St.3d 1448, "the Ohio Supreme Court inexplicably deviated from its prior course by phrasing the standard of review facing the court of appeals as being whether the common pleas court's decision was supported by reliable, probative and substantial evidence"). (Emphasis sic.)
 {¶ 10} An appellate court does, however, have plenary review of questions of law. Chirila v. Ohio State Chiropractic Bd. (2001),145 Ohio App.3d 589, 592, citing Steinfels v. *Page 6 Ohio Dept. of Commerce, Div. of Securities (1998),129 Ohio App.3d 800, 803, appeal not allowed (1999), 84 Ohio St.3d 1488.
 {¶ 11} Appellant's first, second, third, fifth, and eighth assignments of error assert violations of due process, and we shall collectively consider them.
 {¶ 12} "The Fourteenth Amendment to the United States Constitution prohibits any state from depriving `any person of life, liberty, or property, without due process of law.'" State ex rel. Haylett v. OhioBur. of Workers' Comp. (1999), 87 Ohio St.3d 325, 331. Under the Ohio Constitution, "Section 16, Article I * * * states that `every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law." Id. See, also, Sorrell v.Thevenir (1994), 69 Ohio St.3d 415, 422-423, citing Direct PlumbingSupply Co. v. Dayton (1941), 138 Ohio St. 540, 544 (stating that "[t]he `due course of law' provision [in Section 16, Article I of the Ohio Constitution] is the equivalent of the `due process of law' provision in the Fourteenth Amendment to the United States Constitution");Chirila, supra, at 593, citing LTV Steel Co. v. Indus. Comm. (2000),140 Ohio App.3d 680, 688 (stating that "[d]ue process rights guaranteed by the United States and Ohio Constitutions apply in administrative proceedings").
 {¶ 13} "Due process contains two components: procedural due process and substantive due process." State v. Pennington (Jan. 29, 2002), Franklin App. No. 01AP-657, appeal not allowed, 95 Ohio St.3d 1460,2002-Ohio-2230. See, generally, Cleveland Bd. of Edn. v. Loudermill
(1985), 470 U.S. 532, 541, 105 S.Ct. 1487 (stating that "the Due Process Clause provides that certain substantive rights — life, liberty, and property — cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct"); Pennington, supra. *Page 7 
 {¶ 14} "`[D]ue process' is a flexible concept — that the processes required by the Clause with respect to the termination of a protected interest will vary depending upon the importance attached to the interest and the particular circumstances under which the deprivation may occur." Walters v. Natl. Assn. of Radiation Survivors (1985),473 U.S. 305, 320, 105 S.Ct. 3180. However, "[f]or all its consequences, `due process' has never been, and perhaps can never be, precisely defined. `[U]nlike some legal rules' * * * due process `is not a technical conception with a fixed content unrelated to time, place and circumstances.'* * * Rather, the phrase expresses the requirement of `fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty." Lassiter v. Dept. of Social Servs. of DurhamCty., N. Carolina (1981), 452 U.S. 18, 24, 101 S.Ct. 2153, rehearing denied, 453 U.S. 927, 102 S.Ct. 889. (Citation omitted.) "In defining the process necessary to ensure `fundamental fairness,' [the Supreme Court of the United States has] recognized that the Clause does not require that `the procedures used to guard against an erroneous deprivation . . . be so comprehensive as to preclude any possibility of error,' * * * and in addition [the Supreme Court of the United States has] emphasized that the marginal gains from affording an additional procedural safeguard often may be outweighed by the societal cost of providing such a safeguard." Walters, at 320-321. (Citations omitted.)
 {¶ 15} "In a due process challenge pursuant to theFourteenth Amendment, the first inquiry is whether a protected property or liberty interest is at stake." Haylett, at 331, citing Am. Mfrs. Mut. Ins. Co.v. Sullivan (1999), 526 U.S. 40, 59, 119 S.Ct. 977, 989; Mathews v.Eldridge (1976), 424 U.S. 319, 96 S.Ct. 893. *Page 8 
 {¶ 16} In Haver v. Accountancy Bd. of Ohio, Franklin App. No. 05AP-280, 2006-Ohio-1162, appeal not allowed, 110 Ohio St.3d 1440,2006-Ohio-3862, construing this court's judicial antecedents in Korn v.Ohio State Med. Bd. (1988), 61 Ohio App.3d 677, and In the Matter ofVaughn v. State Med. Bd. of Ohio (Nov. 30, 1995), Franklin App. No. 95APE05-645, dismissed, appeal not allowed (1996), 75 Ohio St.3d 1449, reconsideration denied (1996), 75 Ohio St.3d 1498, certiorari denied (1996), 519 U.S. 965, 117 S.Ct. 388, this court concluded that revocation of the appellant's certified public accountant certificate by the Ohio Accountancy Board implicated a protected property right under the Fourteenth Amendment to the United States Constitution and under Section 16, Article I, of the Ohio Constitution. Id. at ¶ 47. Stated differently, in Haver, this court found that the appellant in that case, a licensed professional, had a protected property interest in the practice of his profession after a license to practice had been acquired.
 {¶ 17} Here, like the appellant in Haver, Dr. Althof is a licensed professional. Also, here, as in Haver, a protected property right under the Fourteenth Amendment to the United States Constitution and under Section 16, Article I, of the Ohio Constitution, is at stake. ApplyingHaver, we therefore conclude that Dr. Althof, like the appellant inHaver, has a protected property interest in the practice of psychology. Accord Chirila, supra, at 596, citing Sohi v. Ohio State Dental Bd.
(1998), 130 Ohio App.3d 414, 422, dismissed, appeal not allowed (1999),85 Ohio St.3d 1407, certiorari denied (2000), 528 U.S. 1119,120 S.Ct. 940 (finding that under the first factor of the test inMathews, supra, the appellant had a protected interest in his professional license); Carothers v. Ohio Bd. of Speech-LanguagePathology and Audiology, Geauga App. No. 2004-G-2559, 2004-Ohio-6695, *Page 9 
at ¶ 10, citing Chirila, supra, at 596, citing Sohi, at 422 (acknowledging "that an individual has a protected property interest in a professional license"); see, also, Khan v. State Bd. of AuctioneerExaminers (2004), 577 Pa. 166, 183, 842 A.2d 936 (finding that, under that commonwealth's constitution, after a party has acquired a license to practice a particular profession, the licensed professional has a protected property right in the practice of that profession).
 {¶ 18} In his eighth assignment of error, appellant contends that the common pleas court abused its discretion by failing to find that the board's notice of opportunity for hearing violated appellant's due process rights to reasonable notice and fair hearing. Specifically, appellant asserts that although the board found that appellant undertook a dual relationship with Client G when he made her a co-facilitator of psychotherapy group while he was Client G's psychologist, and presented Client G to the public and prospective group participants in a way that suggested that Client G had qualifications as a mental health professional when she did not hold credentials as a mental health professional, the board's notice of opportunity for hearing failed to contain an allegation that placing Client G in the position of "co-facilitator" violated the law. Accordingly, appellant therefore reasons he was deprived due process of law.
 {¶ 19} "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank Trust Co. (1950),339 U.S. 306, 314, 70 S.Ct. 652. "`The right to a hearing embraces not only the right to present evidence, but also a reasonable opportunity to know the claims of the *Page 10 
opposing party and to meet them. The right to submit argument implies that opportunity; otherwise the right may be but a barren one. * * * '"Gonzales v. United States (1955), 348 U.S. 407, 414, fn. 5,75 S.Ct. 409, quoting Morgan v. United States (1938), 304 U.S. 1, 18,58 S.Ct. 773; see, also, Marshall Durbin Farms, Inc. v. Natl. Farmers Org.,Inc. (C.A.5, 1971), 446 F.2d 353, 356, quoting Fed. Trade Comm. v. Natl.Lead Co. (1957), 352 U.S. 419, 427, 77 S.Ct. 502 (stating that "[t]he right of defendants to present controverting factual data is illusory unless there is adequate notice of plaintiffs' claims. `It goes without saying that the requirements of a fair hearing include notice of the claims of the opposing party and an opportunity to meet them'"); In reMorgenstern (May 28, 1992), Franklin App. No. 91AP-1018 (stating that "[procedural due process requires that fair notice be given to an individual as to the precise nature of the charges to be brought forth at a disciplinary hearing").
 {¶ 20} Thus, the issue raised by appellant's eighth assignment of error resolves to whether appellant had a reasonable opportunity to know the board's claims against him relative to appellant's co-facilitation of group therapy with Client G, and whether appellant had a reasonable opportunity to meet these claims at the hearing before the board. SeeGonzales, at 414, fn. 5; Marshall Durbin Farms, Inc., at 356, quotingNatl. Lead Co., at 427.
 {¶ 21} In its notice of opportunity for hearing, the board charged in part:
 In accordance with Chapter 119 and Chapter 4732. of the Ohio Revised Code, you are hereby notified that the State Board of Psychology (Ohio), (hereafter "Board") intends to determine whether to issue a reprimand or suspend or revoke your license to practice psychology for the following reasons:
 * * * *Page 11 
 (B) From approximately the mid-eighties to December of 1996, DR. ALTHOF provided a course of regularly scheduled psychological psychotherapy services to Client G.
 (C) DR. ALTHOF used the professional psychological relationship to initiate a sexual relationship with Client G. DR. ALTHOF engaged in sexual intercourse with Client G, typically during weekly sessions, while continuing to bill for psychological psychotherapy services, for a period of approximately two years, spanning from 1994 through December 1996. * * *
 * * *
 (E) DR. ALTHOF co-facilitated, with client G, a psychological psychotherapy group for sexually abused women for a period of eight weeks, beginning in January 1996.
 {¶ 22} After considering evidence presented at the administrative hearing, the board found in its tenth finding of fact that "Client G was presented by Dr. Althof's practice to the public and prospective group participants in a way that suggested that Client G had qualifications as a mental health professional."
 {¶ 23} Although the board's notice did not allege that appellant presented Client G to the public and prospective group participants in a way that suggested Client G had qualifications as a mental health professional when, in fact, she did not, appellant did receive notice that his co-facilitation of group therapy with Client G was an issue in the administrative action against him and, consequently, that his co-facilitation of group therapy with Client G likely would be the subject of scrutiny during the adjudication hearing. Furthermore, whether appellant misrepresented client G's qualifications as a mental health professional to prospective group members was raised during the hearing before the board; appellant, through his counsel, did not object to questions concerning *Page 12 
representations about Client G's qualifications as a co-facilitator when this issue was raised at the adjudication hearing; [1] and appellant had some opportunity to respond to these allegations during his own testimony at the hearing. (Tr. Vol. II, 55-60; 115; 119-120; 126-127; Vol. III, 71-73; 130-132; 134-135; 149-150.) See, generally,State v. Williams (1977), 51 Ohio St.2d 112, paragraph one of the syllabus, vacated in part (1978), 438 U.S. 911, 98 S.Ct. 3137, and modified on other grounds by State v. Gillard (1988), 40 Ohio St.3d 226, paragraph two of the syllabus (holding that an appellate court need not consider an error that a party failed to raise before the trial court at a time in which such error could have been corrected or avoided by the trial court); State v. Murphy (2001), 91 Ohio St.3d 516, 532, reconsideration denied, 92 Ohio St.3d 1451, certiorari denied (2002),534 U.S. 1116, 122 S.Ct. 926, quoting State v. Childs (1968),14 Ohio St.2d 56, 62, certiorari denied (1969), 394 U.S. 1002, 89 S.Ct. 1596
(acknowledging that even constitutional rights may be lost by failing to assert them at the proper time).[2]
 {¶ 24} Under such facts and circumstances, we cannot conclude that appellant did not have a reasonable opportunity to know the board's claims against him relative to appellant's co-facilitation of group therapy with Client G, nor to meet those claims at the hearing before the board. *Page 13 
 {¶ 25} Appellant also contends that the board's finding that appellant engaged in "sexually intimate contact" with Client R, rather than "sexual intercourse" as alleged in the board's notice to appellant, and the board's finding that appellant engaged in "inappropriate behavior" with Client G, which included "hand-holding, touching, and statements that were sexually seductive," rather than "sexual intercourse" as alleged in the board's notice to appellant, constituted violations of appellant's due process rights to reasonable notice and fair hearing. Appellant further suggests that the board's factual finding that appellant engaged in "sexually intimate contact" with Client R is impermissibly ambiguous.
 {¶ 26} Here, the board's allegations in its notice provided fair warning to appellant that he was accused of sexual misconduct with Clients R and G. Compare United States v. Lanier (1997), 520 U.S. 259,265-267, 117 S.Ct. 1219 (discussing "fair warning" and due process).
 {¶ 27} With regard to Client R, in its third finding of fact the board found that "[appellant], while serving as Client R's psychologist, undertook a relationship with Client R that included the sharing of intimate details of his personal life, sexually intimate contact, and romantic emotional intimacy." After examining the board's third finding of fact, we conclude that the board's finding that appellant engaged in "sexually intimate contact" with Client R is tantamount to a finding that appellant engaged in "sexual intercourse" with Client R, and, therefore, the board's third finding of fact is not inconsistent with the notice provided to appellant in the board's notice of opportunity for hearing. We further cannot conclude that the board's finding that appellant engaged in "sexually intimate contact" with Client R eludes definitive meaning and is therefore *Page 14 
impermissibly ambiguous. Compare State v. Porterfield,106 Ohio St.3d 5, 2005-Ohio-3095, at ¶ 11 (discussing the level of lucidity necessary for a writing to be unambiguous).[3]
 {¶ 28} As to Client G, in its fifth finding of fact, the board found that "Client G was a very vulnerable client who was prone to interpret physical contact as sexual." In its sixth finding of fact, the board further found that, while rendering professional psychological services to Client G, appellant "engaged in inappropriate behavior with Client G, including hand-holding, touching, and statements that were sexually seductive." Thus, as to Client G, the board's fifth and sixth findings of fact in the aggregate constitute a finding that appellant's hand-holding, touching, and statements that were sexually seductive were tantamount to an expression of sexual intimacy in its effect and significance.
 {¶ 29} Under these facts and circumstances, we cannot conclude that appellant was deprived of a reasonable opportunity to know the board's claims of sexual misconduct relative to Clients R and G, and that appellant did not have a reasonable opportunity to meet those claims at the hearing before the board. We therefore cannot conclude that the common pleas court abused its discretion by finding that appellant's due process rights to reasonable notice and fair hearing were not violated. *Page 15 
 {¶ 30} For the reasons set forth above, we overrule appellant's eighth assignment of error.
 {¶ 31} Appellant's first assignment of error asserts that the common pleas court erred by finding that participation of "patient advocates" in the adjudicative hearing was consistent with due process. See, generally, R.C. 4732.02 (designating three state board of psychology members who are not mental health professionals as "patient advocates");[4] Serednesky v. Ohio State Bd. of Psychology, Franklin App. No. 05AP-633, 2006-Ohio-3146, at ¶ 20. Appellant's first assignment of error does not assert, however, that these "patient advocates" showed personal bias against him.
 {¶ 32} In Serednesky, this court considered the issue that appellant raises in his first assignment of error; namely, whether due process is violated when board members, who are statutorily denominated as "patient advocates," participate in a licensee's adjudication hearing. See id. at ¶ 2; 20-21. The Serednesky court stated:
 Due process requires that an individual in an administrative proceeding is entitled to a fair hearing before an impartial tribunal. See In re Murchison (1955), 349 U.S. 133, 136, *Page 16 75 S.Ct. 623; St. Anthony Hosp. v. U.S. Dept. of Health and Human Serv. (C.A.10 2002), 309 F.3d 680, 711. An administrative agency's determination is presumptively valid and provides that the burden is on the appellant to establish bias. Smith v. State Med. Bd. (July 19, 2001), Franklin App. No. 00AP-1301, citing West Virginia v. Hazardous Waste Facility Approval Bd. (1986), 28 Ohio St.3d 83, 86. This case is similar to Summerfield v. Ohio State Dental Board (Dec. 3, 1998), Licking App. No. 98CA000046, where the court found the lack of specific facts supporting the allegations of bias and prejudice was insufficient to destroy due process and warrant a recusal. Appellant has the burden to prove, beyond merely stating that bias and prejudice exist, that the members are "biased, partial or prejudiced to such a degree that his presence adversely affected the board's decision." West Virginia, supra, at 86. * * *
Id. at ¶ 21.
 {¶ 33} Here, appellant fails to show specific bias or prejudice and, consequently, fails to prove that the presence of the "patient advocates" denied him due process. Absent any showing of specific bias or prejudice, appellant's contention that due process is violated simply because some board members are statutorily denominated as "patient advocates" is unconvincing. See, e.g., Litton Sys., Inc. v. Tracy
(2000), 88 Ohio St.3d 568, quoting State ex rel. Smith v. Columbus
(1993), 66 Ohio St.3d 271, 272 (stating that "`[v]ague allegations of denial of due process or equal protection are not sufficient to establish [one's case]'"). Under these facts, we cannot conclude that the common pleas court abused its discretion by finding that participation of "patient advocates" in the adjudicative hearing was consistent with due process. Accordingly, we overrule appellant's first assignment of error. *Page 17 
 {¶ 34} Appellant's fifth assignment of error asserts that the common pleas court erred by finding that Dr. Jane Woodrow's participation in appellant's adjudication hearing was consistent with due process.
 {¶ 35} "[I]t is axiomatic that a hearing conducted before a biased tribunal does not fulfill a requisite element of fundamental fairness that must predominate in all quasi-judicial proceedings." GibraltarMausoleum Corp. v. Cincinnati (1981), 1 Ohio App.3d 107, 109. (Citations omitted.) However, "[i]t is [also] well-settled that a reviewing court must presume that the decision of an administrative agency is valid and was reached in a sound manner." State of W. Va. v. Ohio Waste FacilityApproval Bd. (1986), 28 Ohio St.3d 83, 86. This presumption imposes upon an appellant the burden of proving his or her contention that a hearing examiner in a cause was biased, partial or prejudiced to such a degree that the hearing examiner's presence adversely affected the board's decision. Id., citing Ohio Motor Vehicle Dealers Bd. v. Cent. CadillacCo. (1984), 14 Ohio St.3d 64, 67. See, also, Summerfield v. Ohio StateDental Bd. (Dec. 3, 1998), Licking App. No. 98CA00046, dismissed appeal not allowed, 85 Ohio St.3d 1443.
 {¶ 36} At the administrative hearing, appellant sought to have Dr. Woodrow, a board member, disqualified from the proceedings. During the 1970s Dr. Woodrow apparently provided psychotherapy services to Client G, and in 1996, as a member of the Ohio Psychological Association's Ethics Committee, Dr. Woodrow allegedly was contacted by one of the state's witnesses, Ed Black, Ph.D., a licensed psychologist. At the hearing, Dr. Woodrow was examined under oath by the hearing officer to determine whether Dr. Woodrow could consider appellant's case in an impartial and unbiased manner. *Page 18 
 {¶ 37} Dr. Woodrow testified that it was possible that she spoke with Dr. Black in 1996 when she was a member of the ethics committee. (Tr. Vol. I, 47.) Dr. Woodrow explained that "[a]ny psychologist concerned about an issue involving ethics is welcome to call a member of the ethics committee. They are usually referred to one that's closest in location to them, so they can call and ask, you know, how should I handle a situation like this." Id. Dr. Woodrow testified that although she would know the name of the psychologist that was calling, she would not know the name of the client that may be the subject of the call. Id.[5] When asked whether she had a specific memory of a discussion with Dr. Black in 1996, Dr. Woodrow testified: "I remember talking with Ed Black more than once over the course of the years, you know. I do remember that he has called me more than once about something that he wondered how to handle." Id.
 {¶ 38} When specifically asked whether she remembered her treatment of Client G, Dr. Woodrow testified: "No, I do not. If it was twenty-eight years ago, I probably don't even have the records anymore." (Tr. Vol. I, 49.)
 {¶ 39} The hearing officer and Dr. Woodrow then had the following exchange:
 Q. Well, what I would indicate to you is I don't believe I have the authority to order you to recuse yourself. All I would ask is that this case is obviously a great deal of importance both to the State and to Dr. Althof.
 A. Right.
 Q. That it's extremely important that you not have any ties with any of the witnesses in terms of memory or any prejudged dealings. *Page 19 
 A. Yes.
 Q. If what you're telling me at the moment is that you believe that you can fairly decide this case, then it's your decision as to whether to recuse yourself.
 If Ms. [G] walked into this room and you recognize her and you recognize perhaps what you may have treated her, I would ask you at that point — based on what [sic] you told me that you don't intend to recuse yourself now, but if Ms. [G] comes in and a bell goes off or a light goes off and you remember specifically about her, etcetera, that may impinge upon issues of credibility or other issues that have to be decided, then I would ask you to please speak up and you may want to reconsider your decision. If when she walks in here, you don't recall her whatsoever, then you are-
 A. Right. I guess I might recognize a face although twenty-eight years, I don't know.
 Q. Well, I will leave that up to you then.
 A. Yes.
(Tr. Vol. I., 49-50.)
 {¶ 40} Based upon our review of Dr. Woodrow's testimony and the evidence, we conclude that appellant has failed to satisfy his burden that Dr. Woodrow was biased, partial or prejudiced to such a degree that her presence adversely affected the board's decision.
 {¶ 41} Accordingly, for the reasons set forth above, appellant's fifth assignment of error is overruled.
 {¶ 42} Appellant's second assignment of error asserts that the common pleas court erred by finding that the board's failure to enforce subpoenas duces tecum was consistent with due process. At the adjudication hearing, appellant sought to exclude the *Page 20 
testimony of Clients G, R, and M for failure to comply with the board's subpoenas duces tecum. (Tr. Vol. I, 23.)
 {¶ 43} Although appellant and the state agree that appellant requested the board to issue subpoenas duces tecum to Clients R, M, and G, and the parties agree that the board in fact issued subpoenas to Clients R, M, and G, we find no copies of the purported subpoenas in the record. At the adjudication hearing, however, the assistant attorney general represented to the board that appellant's requests for subpoenas duces tecum called for Clients R, M, and G "to bring any and all notes, journals, diaries, memoranda, correspondence, e-mail transcriptions, photographs and documentation of any nature regarding Dr. Althof." (Tr. Vol. I, 24.) The assistant attorney general further represented to the board that Client G "was asked to provide all of her medical, psychiatric, psychological counseling and hospital records for the past thirty years including but not limited to any and all records of mental health counseling. [Clients M and R] were asked to provide the same information for a twenty-year timespan." Id.
 {¶ 44} "Generally, an administrative agency or board * * * has no greater power than that expressly conferred upon it and has no inherent power." Browning-Ferris Industries of Ohio, Inc. v. Mahoning Cty. Bd. ofHealth (1990), 69 Ohio App.3d 96, 100, cause dismissed (1991),60 Ohio St.3d 704. See, also, State ex rel. Clarke v. Cook (1921),103 Ohio St. 465, 467 (stating that "[a]s administrative boards created by statute, their powers are necessarily limited to such powers as are clearly and expressly granted by the statute").
 {¶ 45} In D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health,96 Ohio St.3d 250, 2002-Ohio-4172, the Supreme Court of Ohio explained: *Page 21 
 It is well settled that an administrative agency has only such regulatory power as is delegated to it by the General Assembly. Authority that is conferred by the General Assembly cannot be extended by the administrative agency. Burger Brewing Co. v. Thomas (1975), 42 Ohio St.2d 377, 379, 71 O.O.2d 366, 329 N.E. 693.
 "Such grant of power, by virtue of a statute, may be either express or implied, but the limitation put upon the implied power is that it is only such as may be reasonably necessary to make the express power effective. In short, the implied power is only incidental or ancillary to an express power, and, if there be no express grant, it follows, as a matter of course, that there can be no implied grant.
 "In construing such grant of power, particularly administrative power through and by a legislative body, the rules are well settled that the intention of the grant of power, as well as the extent of the grant, must be clear; that in case of doubt that doubt is to be resolved not in favor of the grant but against it."
Id. at ¶ 38-40, quoting State ex rel. A. Bentley Sons Co. v.Pierce (1917), 96 Ohio St. 44, 47.
 {¶ 46} R.C. 4732.17(B) provides that: "[e]xcept as provided in section4732.171 of the Revised Code, before the board may deny, suspend, or revoke a license under this section, or otherwise discipline the holder of a license, written charges shall be filed with the board by the secretary and a hearing shall be had thereon in accordance with Chapter 119. of the Revised Code." See, generally, Ohio Adm. Code 4732-19-01
(providing that "[licensed psychologists and licensed school psychologists governed by Chapter 4732. of the Revised Code and by these rules shall be disciplined in accordance with Chapters 4732. and 119. of the Revised Code for violation of these rules").
 {¶ 47} R.C. 119.09 provides in part:
 For the purpose of conducting any adjudication hearing required by sections 119.01 to 119.13 of the Revised Code, *Page 22 
the agency may require the attendance of such witnesses and the production of such books, records, and papers as it desires, and it may take the depositions of witnesses residing within or without the state in the same manner as is prescribed by law for the taking of depositions in civil actions in the court of common pleas, and for that purpose the agency may, and upon the request of any party receiving notice of the hearing as required by section 119.07 of the Revised Code shall, issue a subpoena for any witness or a subpoena duces tecum to compel the production of any books, records, or papers, directed to the sheriff of the county where such witness resides or is found, which shall be served and returned in the same manner as a subpoena in a criminal case is served and returned. * * *
 * * *
 In any case of disobedience or neglect of any subpoena served on any person or the refusal of any witness to testify to any matter regarding which he may lawfully be interrogated, the court of common pleas of any county where such disobedience, neglect, or refusal occurs or any judge thereof, on application by the agency shall compel obedience by attachment proceedings for contempt, as in the case of disobedience of the requirements of a subpoena issued from such court, or a refusal to testify therein.
See, also, Ohio State Bd. of Pharmacy v. Frantz (1990),51 Ohio St.3d 143, 145.[6]
 {¶ 48} Thus, under R.C. 119.09, as a remedy for a witness's disobedience or neglect of a subpoena duces tecum, the board does not have express authority to exclude a witness's testimony at an adjudication hearing as a sanction for refusing to comply with the board's subpoena duces tecum. Furthermore, because the board has a statutory means of effecting compliance with its subpoenas under R.C.119.09, namely *Page 23 
seeking attachment proceedings before a common pleas court, it is unnecessary for the board to have implied authority to exclude a witness's testimony as a sanction for refusing to comply with the board's subpoena duces tecum. See Green v. Western Reserve PsychiatricHabilitation Ctr. (1981), 3 Ohio App.3d 218, 220.
 {¶ 49} Accordingly, we cannot conclude that the board erred by failing to exclude the testimony of Clients R, M, and G as a sanction for failing to comply with the board's subpoenas duces tecum.
 {¶ 50} Appellant nevertheless asserts that he was prejudiced by the board's failure to enforce the subpoenas duces tecum because it was probable that information contained in these records could be used to rebut Clients R, M and G's credibility, and that these records likely would contain references to these clients' allegations against appellant.
 {¶ 51} Overruling appellant's claim that he was deprived of a fair hearing because the board failed to enforce its subpoenas duces tecum, the common pleas court found, among other things, that the evidence presented at the hearing was sufficient to provide an accurate measure of the credibility of Clients R, M, and G. The common pleas court also found that, because the records of other doctors or psychiatrists would not directly reflect the complaints of Clients R, M, and G against appellant, the board did not abuse its discretion by proceeding with the hearing against appellant without further delay.
 {¶ 52} Based upon our review of the evidence in the record, we cannot conclude that these findings by the common pleas court constitute an abuse of discretion, namely, "being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." Pons, at 621. *Page 24 
 {¶ 53} Accordingly, for the reasons set forth above, we overrule appellant's second assignment of error.
 {¶ 54} Appellant's third assignment of error asserts that the common pleas court erred by finding that an ex parte conversation between the board and an assistant attorney general was consistent with due process. The board contends that the ex parte conversation at issue occurred approximately a year before the hearing, and the purpose of the contact was to discuss a proposed consent agreement regarding appellant, which the board later denied. The board further argues that, according to the terms of the proposed consent agreement, appellant agreed that if the matter against appellant were to proceed to a hearing, then appellant would not assert a claim that the board was prejudiced by its review and discussion of the proposed consent agreement.
 {¶ 55} Although appellant asserts a due process violation based upon an ex parte conversation between an assistant attorney general and the board, appellant fails to support such an assertion with evidence that identifies the nature of the ex parte conversation, and how, if at all, such an ex parte conversation prejudiced the board. See, generally,Van Jackson v. Check `N Go of Illinois, Inc. (N.D.Ill, 2000),193 F.R.D. 544, 546 (observing that "undeveloped arguments are waived and bald assertions are worthless").
 {¶ 56} Furthermore, within the record, we find no record of the ex parte conversation between the board and assistant attorney general. "A fundamental, time-honored principle of appellate review is that a court of appeals may not deviate from the record in analyzing and deciding [an] appellant's assignments of error." State v. Howard (June 11, 1981), Cuyahoga App. No. 43210. "`Looking into the brief of counsel we may learn what is absent from the record, but we are not justified in reversing judgments on *Page 25 
facts asserted in the briefs of counsel." Howard, supra, quotingDavies v. New Castle Lowell RR. Co. (1905), 71 Ohio St. 325, 330.
 {¶ 57} To overcome a presumption that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in an administrative adjudication, a party "must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." Withrow v. Larkin (1975),421 U.S. 35, 47, 95 S.Ct. 1456; see, also, State of W. Va. v. Ohio WasteFacility Approval Bd., supra, at 86 (stating that a reviewing court must presume that an administrative agency's decision was valid and reached in a sound manner, and such a presumption imposes upon an appellant the burden of proving his or her contention that a hearing examiner in a cause was biased, partial or prejudiced to such a degree that his or her presence adversely affected the board's decision).
 {¶ 58} Here, we find no evidence to support a finding that overcomes the presumption that the board's decision was valid and reached in a sound manner. Based upon our review of the record before us, we cannot conclude that the common pleas court abused its discretion by finding that appellant was not prejudiced by the ex parte discussion between the board and an assistant attorney general.
 {¶ 59} Accordingly, for the foregoing reasons, we overrule appellant's third assignment of error. *Page 26 
 {¶ 60} Appellant's fourth assignment of error asserts that the common pleas court erred by finding that testimony related to appellant's temperament and behavior were properly admitted by the board.
 {¶ 61} "Generally speaking, `[a] hearing officer has broad discretion in accepting and rejecting evidence and in conducting the hearing in general.'" Stancourt v. Worthington City School Dist. Bd. of Edn.,164 Ohio App.3d 184, 2005-Ohio-5702, at ¶ 70, on reconsideration,Stancourt v. Worthington City School Dist. Bd. of Edn., Franklin App. No. 04AP-870, 2005-Ohio-6750 (citations omitted); see, also,Petrilla v. Ohio State Bd. of Pharmacy, 153 Ohio App.3d 428,2003-Ohio-3276, at ¶ 12, appeal not allowed, 100 Ohio St.3d 1433,2003-Ohio-5396.
 {¶ 62} Here, the common pleas court found that evidence related to appellant's temperament was relevant: (1) to support a witness's testimony about his concern for the well-being of appellant's patients; (2) to explain other witnesses' delays in submitting complaints about appellant to the board; and (3) to support a claim of negligence concerning a particular client that appellant had treated.
 {¶ 63} Based on our review of the evidence in the record, we cannot conclude that the common pleas court's determination that evidence of appellant's temperament was relevant constitutes an abuse of discretion.
 {¶ 64} Accordingly, we overrule appellant's fourth assignment of error.
 {¶ 65} Appellant's sixth assignment of error asserts that the common pleas court erred by finding that R.C. 2305.51 did not provide immunity to appellant. See, generally, R.C. 2305.51 (specifying liability of mental health professionals and organizations for violent behavior of mental health clients or patients). Appellant asserts that he properly *Page 27 
enlisted the assistance of Client S, another group therapy member, to aid Client M when Client M was in the midst of a suicidal crisis. Appellant further asserts that R.C. 2305.51 immunizes him from disciplinary action by the board because he disclosed information in an effort to save Client M's life. Appellant therefore reasons that the board's finding that appellant breached the confidentiality of Client M, a former patient and a group therapy member, is contrary to R.C.2305.51.
 {¶ 66} During the administrative hearing, Client S testified that she and Client M were participants in a group for persons who had a history of having been sexually abused and who had developed post-traumatic stress disorder. (Tr. Vol. II, 215-216.) According to Client S, one day while she was at home, appellant contacted her by telephone to assist Client M, who was suicidal at the time. (Tr. Vol. II, 216-222.) Client S was, however, unable to specifically identify the date of this incident. (Tr. Vol. II, 224.)
 {¶ 67} Although Client S was unable to specifically recall the date of the incident involving Client M, absent any evidence to the contrary, we can reasonably conclude from Client S's other testimony that the incident involving Client M occurred sometime during the early 1990s, perhaps in 1992.
 {¶ 68} During the administrative hearing, Client S testified that at the time of the incident involving Client M, she was living near Racine, Ohio. (Tr. Vol. II, 217); that she lived in Racine, Ohio, circa 1992 (Tr. Vol. II, 213); and that she had received treatment from appellant during "the first part of the `90s * * * in 1992 perhaps." Id. On cross-examination, Client S also testified that she participated in group therapy and received individual therapy from appellant during the same time period. (Tr. Vol. II, 223.) *Page 28 
 {¶ 69} R.C. 2305.51, however, did not become effective until September 15, 1999. R.C. 1.48 provides that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." Here, R.C. 2305.51 is silent as to whether it applies retroactively. We must therefore presume that it only applies prospectively. See Doe v.Archdiocese of Cincinnati, 109 Ohio St.3d 491, 2006-Ohio-2625, at ¶ 40, reconsideration denied, 110 Ohio St.3d 1444, 2006-Ohio-3862. Because R.C. 2305.51 may only be prospectively applied, we therefore conclude that R.C. 2305.51 is inapplicable to the facts of this case, and we cannot conclude that the common pleas court abused its discretion by concluding that R.C. 2305.51 did not provide immunity to appellant.
 {¶ 70} Accordingly, for the foregoing reasons, we overrule appellant's sixth assignment of error.
 {¶ 71} Appellant's seventh assignment of error asserts the common pleas court abused its discretion by finding that the board did not err by allowing a witness to read from a journal that contained hearsay evidence.
 {¶ 72} Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Under Evid.R. 802, "[h]earsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." *Page 29 
 {¶ 73} "[Administrative agencies are not bound by the rules of evidence applied in courts." Black v. Ohio State Bd. of Psychology,160 Ohio App.3d 91, 2005-Ohio-1449, at ¶ 17, citing Haley v. Ohio StateDental Bd. (1982), 7 Ohio App.3d 1, 6 (Wilson, J., dissenting). Ohio Adm. Code 4732-17-03(D)(10), effective July 1, 2003, provides, in part, that "[t]he `Ohio Rules of Evidence' may be taken into consideration by the board or its attorney hearing examiner in determining the admissibility of evidence, but shall not be controlling." Thus, hearsay evidence is not precluded in an administrative hearing before the board.Black, at ¶ 17. Therefore, to the extent that the attorney hearing examiner admitted hearsay evidence, such an admission of hearsay evidence cannot by itself constitute reversible error.
 {¶ 74} In Haley, supra, the Second District Court of Appeals, however, cautioned:
 As a general rule, even apart from specific statutes, administrative agencies are not bound by the strict rules of evidence applied in court. Provident Sav. Bank Trust Co. v. Tax Commission (1931), 10 O.O. 469, 2 Ohio Supp. 268. However, an administrative agency should not act upon evidence which is not admissible, competent, or probative of the facts which it is to determine. Eastern Ohio Distributing Co. v. Bd. of Liquor Control (1950), Ohio App., 59 Ohio Law Abs. 188. The hearsay rule is relaxed in administrative proceedings, but the discretion to consider hearsay evidence cannot be exercised in an arbitrary manner.
Id. at 6.
 {¶ 75} Thus, the issue presented by appellant's seventh assignment of error resolves to whether in this case permitting a witness to read from a journal that contained hearsay evidence constituted an arbitrary exercise of discretion.
 {¶ 76} Here, the common pleas court found that, at the adjudication hearing, appellant's counsel objected several times to the admission of hearsay testimony, and *Page 30 
this, in turn, prompted the attorney hearing examiner to instruct the board that hearsay evidence could not be proven and should be disregarded. The common pleas court further found that appellant was able to effectively cross-examine the witness that was permitted to read from a journal, and that appellant provided no evidence to show that the board was materially influenced by the admission of hearsay statements.
 {¶ 77} Based on our review of the evidence, we cannot conclude that the common pleas court abused its discretion by concluding that the attorney hearing examiner did not err by permitting a witness to read from a journal that contained hearsay evidence.
 {¶ 78} Accordingly, we overrule appellant's seventh assignment of error.
 {¶ 79} Appellant's ninth assignment of error asserts that the common pleas court violated R.C. 119.12 by vacating its earlier stay of execution of the board's order. See, generally, R.C. 119.12.[7] For the reasons that follow, we conclude that appellant's ninth assignment of error is moot.
 {¶ 80} After appellant's appeal was submitted to this court, appellant moved this court for an order suspending execution of the board's order of revocation. By journal entry, this court granted appellant's motion and suspended execution of the board's order.
 {¶ 81} By suspending execution of the board's revocation order, this court provided appellant with the relief that he seeks in his ninth assignment of error, namely, a *Page 31 
stay of execution of the board's order. See In re Vaughn, supra (concluding that assignments of error pertaining to R.C. 119.12 were moot because the court granted the appellant's motion for stay of revocation pending appeal); see, also, Robinson v. Indus. Comm., Franklin App. No. 04AP-1010, 2005-Ohio-2290, at ¶ 6, appeal not allowed,106 Ohio St.3d 1544, 2005-Ohio-5343, citing Peeples v. Dept. ofCorr. (Oct. 12, 1995), Franklin App. No. 95API03-337; and Ohio Civ.Serv. Emp. Assn., AFSCME, Local 11, AFL-CIO v. Ohio Dept. ofTransp. (1995), 104 Ohio App.3d 340, 343 (stating that "[generally, when a litigant receives the relief sought before the completion of the law suit, the action is moot and the case is dismissed"); Wallace v.University Hospitals of Cleveland (1961), 171 Ohio St. 487, 488
(observing that "the plaintiff has obtained all that she asks for in this action and no order could be made by this court that would give her more than she already has. As between these parties, therefore, the case is moot").
 {¶ 82} There are exceptions to the mootness doctrine, however, that permit a court to hear an otherwise moot case. Tschantz v. Ferguson
(1991), 57 Ohio St.3d 131, 133; Franchise Developers, Inc. v.Cincinnati (1987), 30 Ohio St.3d 28, 31; Robinson, supra, at ¶ 7;Nextel West Corp. v. Franklin Cty. Bd of Zoning Appeals, Franklin App. No. 03AP-625, 2004-Ohio-2943, at ¶ 14; In re Vaughn, supra (discussing exceptions to mootness doctrine). "A court may hear an otherwise moot case when the issues are capable of repetition, yet evade review. * * * A court may also hear an otherwise moot case when the issues involved concern a matter of great public or general interest."Robinson, at ¶ 7; see, also, Nextel West Corp., at ¶ 14-15. *Page 32 
 {¶ 83} "`Ordinarily, however, it is only the highest court of the state that adopts this procedure rather than a court whose decision does not have binding effect over the entire state.'" Nextel West Corp., at ¶ 15, quoting Harshaw v. Farrell (1977), 55 Ohio App.2d 246, 251.
 {¶ 84} As this court is not the highest court of the state and our decisions do not have binding effect over the entire state, we decline to consider appellant's ninth assignment of error here under an exception to the mootness doctrine.
 {¶ 85} Accordingly, for the reasons set forth above, we find appellant's ninth assignment of error is moot.
 {¶ 86} Appellant's tenth assignment of error asserts that the common pleas court erred by finding that the board's order was supported by reliable, probative, and substantial evidence.
 {¶ 87} In Our Place, supra, the Supreme Court of Ohio explained what constitutes reliable, probative, and substantial evidence under R.C.119.12. Id. at 571. The Our Place court stated:
 The evidence required by R.C. 119.12 can be defined as follows: (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.
Id. at 571. (Footnotes omitted.)
 {¶ 88} Therefore, our determination of appellant's tenth assignment of error resolves to examining whether the common pleas court abused its discretion by finding *Page 33 
that the board's order was based on evidence that (1) could confidently be trusted and had a reasonable probability of truth, (2) was relevant in determining the issue, and (3) had some importance and value.
 {¶ 89} Appellant contends that the testimony of Clients G and R was internally inconsistent and was readily impeached by evidence of prior inconsistent statements and admissions. Appellant therefore reasons that the common pleas court should have held that board erred by giving weight to this testimony.
 {¶ 90} In Conrad, supra, construing Andrews, supra, the Supreme Court of Ohio instructed that whether an agency's order is supported by reliable, probative, and substantial evidence is in essence a legal question as to the absence or presence of the requisite quantum of evidence. Id. at 111. However, although the common pleas court's determination implicates in essence a legal question, "inevitably it involves a consideration of the evidence, and to a limited extent would permit a substitution of judgment by the reviewing Common Pleas Court." Id. The Conrad court directed:
 In undertaking this hybrid form of review, the Court of Common Pleas must give due deference to the administrative resolution of evidentiary conflicts. For example, when the evidence before the court consists of conflicting testimony of approximately equal weight the court should defer to the determination of the administrative body, which, as the factfinder, had the opportunity to observe the demeanor of the witnesses and weigh their credibility. However, the findings of the agency are by no means conclusive.
 Where the court, in its appraisal of the evidence, determines that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate, or modify the administrative order. Thus, where a witness' testimony is internally inconsistent, or is impeached by evidence of a prior inconsistent statement, the court may *Page 34 
properly decide that such testimony should be given no weight. Likewise, where it appears that the administrative determination rests upon inferences improperly drawn from the evidence adduced, the court may reverse the administrative order.
Id. at 111-112
 {¶ 91} In Pons, supra, the Supreme Court of Ohio also directed:
 * * * [W]hen reviewing a * * * board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession. The policy reasons for this was noted in Arlen v. State
(1980), 61 Ohio St.2d 168, 173, 15 O.O.3d 190, 194, 399 N.E.2d 1251, 1254-1255: "`* * * The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of [people] equipped with the necessary knowledge and experience pertaining to a particular field. * * *'" (Quoting Farrand v. State Med. Bd. [1949], 151 Ohio St. 222, 224, 39 O.O. 41, 42, 85 N.E.2d 113, 114.
Id. at 621-622.
 {¶ 92} Applying these principles, we find that the common pleas court did not abuse its discretion by finding that the board's order was supported by reliable, probative, and substantial evidence. As to Client R's allegation of a sexual relationship between her and appellant, the common pleas court found conflicting evidence in the record, and the court gave due deference to the board's resolution of these evidentiary conflicts. As to the board's findings that "Client G was a very vulnerable client who was prone to interpret physical contact as sexual," and that appellant "engaged in inappropriate behavior with Client G, including hand-holding, touching, and statements that were sexually seductive," the common pleas court correctly found that appellant's own testimony supported that the *Page 35 
board's finding of fact that Client G was prone to interpret physical contact as sexual in nature.
 {¶ 93} Furthermore, even if, as appellant contends, the common pleas court erroneously found that appellant failed to deny actions relative to Client G because appellant was not directly questioned at the adjudication hearing about some specific actions, we cannot conclude that such a finding constituted "not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." Pons, at 621.
 {¶ 94} Additionally, we cannot conclude that the common pleas court abused its discretion by finding that Client M's waiver of confidentiality did not absolve appellant from disciplinary action for disclosing confidential information about Client M to Client S. Here, as a reviewing court, the common pleas court was required to accord due deference to the board's interpretation of its technical and ethical requirements. Pons, at 621. After reviewing Client M's form that waived confidentiality, we find no provision that expressly permitted appellant to disclose confidential information to a non-mental health professional, such as Client S, if Client M were to become suicidal.
 {¶ 95} For the reasons set forth above, we therefore cannot conclude that the common pleas court abused its discretion by finding that the board's order was supported by reliable, probative, and substantial evidence. We therefore overrule appellant's tenth assignment of error.
 {¶ 96} Accordingly, having overruled appellant's first, second, third, fourth, fifth, sixth, seventh, eighth, and tenth assignments of error, and having found appellant's ninth *Page 36 
assignment of error is moot, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
SADLER, P.J., and FRENCH, JJ., concur.
[1] At the adjudication hearing, appellant, through counsel, objected to a question concerning a facsimile transmission that Client G had earlier testified that she had no recollection of sending. (Tr. Vol. II, 55.) However, appellant, through counsel, did not object to testimony related to Client G's co-facilitation of group therapy.
[2] In Murphy, the Supreme Court of Ohio stated: "The waiver rule requires that a party make a contemporaneous objection to alleged trial error in order to preserve that error for appellate review. The rule is of long standing, and it goes to the heart of an adversary system of justice. Even constitutional rights `may be lost as finally as any others by a failure to assert them at the proper time.'" Id. at 532, quoting Childs, at 62.
[3] In Porterfield, the Supreme Court of Ohio observed:
 * * * [N]o clear standard has evolved to determine the level of lucidity necessary for a writing to be unambiguous. Some courts have reasoned that when multiple readings are possible, the provision is ambiguous. * * * The problem with this approach is that it results in courts' reading ambiguities into provisions, which creates confusion and uncertainty. When confronted with allegations of ambiguity, a court is to objectively and thoroughly examine the writing to attempt to ascertain its meaning. * * * Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed. Otherwise, allegations of ambiguity become self-fulfilling.
Id. at ¶ 11. (Citations omitted.)
[4] R.C. 4732.02 provides, in part:
 * * * Three members shall be patient advocates who are not mental health professionals and who either are parents or other relatives of a person who has received or is receiving mental health services or are representatives of organizations that represent persons who have received or are receiving mental health services. At least one patient advocate member shall be a parent or other relative of a mental health service recipient, and at least one patient advocate member shall be a representative of an organization representing mental health service recipients. * * * Of the patient advocate members whose positions are created on the effective date of this amendment, one shall replace the current member who is not a psychologist or other health professional at the end of that member's term, one shall be appointed for a term that ends on October 5, 2003, and one shall be appointed for a term that ends on October 5, 2006. Thereafter, terms of office for all members shall be for five years, commencing on the sixth day of October and ending on the fifth day of October.
[5] Dr. Woodrow also testified, in part: "[A psychologist] may be asking me about how to work with another psychologist; they may be asking me how to work with a client. There are any number of kinds of questions that they might have, and we would try to discuss the ethics of a situation with a psychologist." (Tr. Vol. I, 48.)
[6] In Frantz, the Supreme Court of Ohio observed: "The purpose of the portion of R.C. 119.09 in issue as stated therein is to empower an agency in its conduct of an adjudication hearing to require, if it desires, the attendance of witnesses, production of books, records and papers and the deposition of witnesses. And for the same purpose, the agency is required to issue subpoenas for witnesses or subpoenasduces tecum for the production of books, records or papers at the request of any party who is notified of the hearing pursuant to R.C. 119.07." Id at 145.
[7] R.C. 119.12 provides, in part:
 The filing of a notice of appeal shall not automatically operate as a suspension of the order of an agency. If it appears to the court that an unusual hardship to the appellant will result from the execution of the agency's order pending determination of the appeal, the court may grant a suspension and fix its terms. If an appeal is taken from the judgment of the court and the court has previously granted a suspension of the agency's order as provided in this section, such suspension of the agency's order shall not be vacated and shall be given full force and effect until the matter is finally adjudicated. * * * *Page 1