[Cite as *Yoonessi v. State Med. Bd. of Ohio*, 2024-Ohio-169.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Mahmood Yoonessi, M.D., | : | |
| Appellant-Appellant, | : | |
| | | No. 23AP-160 |
| v. | : | (C.P.C. No. 21CV-1658) |
| State Medical Board of Ohio, | : | (REGULAR CALENDAR) |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on January 18, 2024

**On brief:** *Dinsmore & Shohl, L.L.P., Todd W. Collis, Daniel S. Zinsmaster*, and *Gregory A. Tapocsi*, for appellant. **Argued:** *Gregory A. Tapocsi.*

**On brief:** *Dave Yost*, Attorney General, *Grant Wilson*, and *Kyle C.* Wilcox, for appellee. **Argued:** *Grant Wilson.*

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Mahmood Yoonessi, M.D., appeals the judgment of the Franklin County Court of Common Pleas affirming the order of the State Medical Board of Ohio (hereinafter "SMBO"), denying his motion to supplement the administrative record and permanently denying his application to reinstate his license to practice medicine in Ohio. He argues that the court committed legal error by refusing to allow him to introduce evidence that was not part of the record before the SMBO, and that the SMBO's notice of opportunity hearing was deficient because the action was based upon charges that were not included in that notice.

{¶ 2} Yoonessi is originally from Iran and he completed his first obstetric/gynocological residency there in 1966. He was licensed to practice medicine in Ohio in 1972, but his Ohio license expired in 1974 after he moved to New York. His Ohio license lapsed in 1976, and he has not practiced in Ohio nor held a medical license in Ohio

at any point thereafter. Yoonessi worked as an associate obstetric/gynocological professor at the State University of New York—Buffalo, as well as in private practice for many years, but that relationship ended in 2002 amid a dispute about whether he was required to comply with a work rule regarding employment at certain area hospitals. Around that same time, Yoonessi began to be investigated by the New York Medical Board ("NYMB") for negligence and other issues relating to patient care from 1989 through 2000. After a 10-day hearing, the NYMB issued a 32-page order on June 5, 2002 revoking Yoonessi's New York license. That decision was allowed to remain in place by the New York Supreme Court in December 2003. The California Medical Board also revoked Yoonessi's license that same year. Yoonessi applied to have his New York license reinstated in 2005 with limited success; but ultimately, in 2013, the New York Board of Regents denied restoration of Yoonessi's New York license at a hearing for which he asserts he did not receive notice and did not have the ability to appear.

{¶ 3} In April 2020, Yoonessi applied to have his Ohio license restored. A hearing was held on November 30, 2020 before a hearing examiner of the SMBO, at which Yoonessi testified on his own behalf. Yoonessi contends that at that hearing he was precluded from introducing "*certain mitigating relevant evidence concerning the facts that served as the basis for the New York Board's allegations.*" (Emphasis sic.) (Brief of Appellant at 5.) On February 9, 2021, the hearing examiner issued a report and recommendation endorsing permanent denial of Yoonessi's application. (Mar. 15, 2021 Report & Recommendation, attached to Notice of Appeal at 1-32.) The SMBO considered and ratified the report and recommendation by a 10-0-2 vote at its March 10, 2021 regular meeting. (Mar. 10, 2021 Excerpt, attached to Notice of Appeal at 1-3.)

{¶ 4} Yoonessi filed a timely notice of appeal with the SMBO and the Franklin County Court of Common Pleas on March 15, 2021, and the trial court issued an order affirming the SMBO's order. (Feb. 16, 2023 Decision and Entry.) This timely appeal followed.

{¶ 5} Yoonessi's merit brief asserts two assignments of error with the trial court's judgment, and in his reply brief, Yoonessi for the first time asserts a new assignment of error. We begin our analysis of this case by rejecting Yoonesi's supplemental assignment of error. Yoonessi's reply brief contends that pursuant to *TWISM Ents., L.L.C. v. State Bd.*

*of Registration for Professional Engineers & Surveyors*, 172 Ohio St.3d 225, 2022-Ohio-4677, the SMBO's "interpretation of the ethical and legal requirements of the medical profession" (Reply Brief of Appellant at 2), is not entitled to deference, and that the SMBO's interpretation of the "bootstrap" statute, R.C. 4731.22(B)(22), is incorrect and not entitled to deference:

> Pursuant to the Supreme Court of Ohio's holding in the *TWISM* decision, mandatory deference to the Board's interpretation of a statute or rule is improper.

*Id.* Reply briefs are designed "to afford the appellant an opportunity to respond to the brief of the appellee, not to raise a new argument for the first time. *Cullinan v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 15AP-390, 2016-Ohio-1083, ¶ 19, citing *State v. Mitchell*, 10th Dist. No. 10AP-756, 2011-Ohio-3818, ¶ 47 ("A reply brief affords an appellant an opportunity to respond to an appellee's brief, * * * and it is improper to use it to raise a new issue."). More importantly, Yoonessi's *TWISM* argument has no application here. *TWISM* rejects deference to agency interpretations of statutes as a matter of separation of powers, because "[w]hen a court defers to an agency's interpretation of the law, it hands to the executive branch the judicial authority 'to say what the law is.' " *TWISM* at ¶ 34, quoting *State v. Parker*, 157 Ohio St.3d 460, 2019-Ohio-3848, ¶ 31. Yoonesi cites no authority that would extend *TWISM* to prevent the SMBO from relying upon its own expertise as to "the technical and ethical requirements of its profession," *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993), or any authority that would forbid the SMBO from determining whether he was eligible for license reinstatement. Indeed, he could not do so—neither action is an "agency interpretation of the law" that would fall within the ambit of *TWISM*, but simply an application of the law and the SMBO's expertise to the facts of Yoonessi's case. It is undisputed that Yoonessi's license was suspended in both New York and California, and Yoonessi does not dispute that R.C. 4731.22(B)(22) empowers the SMBO to refuse to reinstate his license on that basis alone. The trial court did not defer to the SMBO on its interpretation of the law, and *TWISM* does not reach so far as to restrict the SMBO from serving the precise function that the legislature created it to serve. *See TWISM* at ¶ 3 ("[I]t is the role of the judiciary, not administrative agencies, to make the ultimate determination about what *the law* means. Thus, the judicial branch is *never* required to defer to an agency's interpretation of *the law*. As we explain, an agency interpretation is

simply one consideration a court *may* sometimes take into account in rendering the court's own independent judgment as to what *the law* is."). (Emphasis added.) Accordingly, even if Yoonessi had properly presented his *TWISM* argument, we would reject it, but given his failure to do so requires no more of this court's attention.

{¶ 6}   Yoonessi's merit brief presents the following two assignments of error for this court's consideration:

> [I.] The Common Pleas Court committed legal error by affirming the Board's decision to deny Dr. Yoonessi's ability to introduce mitigating evidence pertaining to the underlying charges in the Board's Notice of Opportunity for Hearing.
>
> [II.] The Common Pleas Court committed an abuse of discretion in finding that the Board's Order was supported by reliable, probative, and substantive evidence and was in accordance with law because the action was based upon charges or reasons that were not included in the Board's Notice of Opportunity for Hearing.

Both assignments of error are subject to the rule that when reviewing an order from the SMBO, a common pleas court is required to affirm the order if it is supported by reliable, probative, and substantial evidence, and is in accordance with law. R.C. 119.12(M). *See also Pons* at 621. But as the appellate court, our review is even more limited than that of the trial court—it is not the function of the appellate court to examine the evidence; rather, it is to determine only if the trial court has abused its discretion. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for that of either the SMBO or the trial court, but must instead affirm the trial court's judgment. *Id.* And in *Pons*, the Supreme Court of Ohio held that "when reviewing a medical board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession." *Id.*

> The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of [people] equipped with the necessary knowledge and experience pertaining to a particular field. A medical disciplinary proceeding is a special statutory proceeding conducted by twelve persons, eight of whom are licensed physicians. R.C. 4731.01. Thus, a majority of the board members possess the specialized knowledge needed to determine the acceptable standard of general medical practice.

> Hence, the medical board is quite capable of interpreting technical requirements of the medical field and quite capable of determining when conduct falls below the minimum standard of care.

*Id.* at 621-23. R.C. 4731.22(B)(22), which governs the SMBO's action in this case, provides as follows:

> Except as provided in division (P) of this section, the board, by an affirmative vote of not fewer than six members, *shall, to the extent permitted by law*, limit, revoke, or suspend a license or certificate to practice or certificate to recommend, refuse to issue a license or certificate, refuse to renew a license or certificate, *refuse to reinstate a license or certificate*, or reprimand or place on probation the holder of a license or certificate for * * * [*a*]*ny of the following actions taken by an agency responsible for authorizing, certifying, or regulating an individual to practice a health care occupation or provide health care services in* this state or *another jurisdiction*, for any reason other than the nonpayment of fees: *the limitation, revocation, or suspension of an individual's license to practice*; acceptance of an individual's license surrender; denial of a license; *refusal to renew or reinstate a license*; imposition of probation; or issuance of an order of censure or other reprimand.

(Emphasis added.)

{¶ 7}   In his first assignment of error, Dr. Yoonessi contends that the SMBO was wrong for quoting the New York report and recommendation in his notice of hearing in this case, and that the hearing officer's report and recommendation should not have relied upon the New York report without allowing Yoonessi a chance to rebut and mitigate the allegations and findings of that report with extrinsic evidence.

{¶ 8}   In his reply brief, Yoonessi apparently accepts that he is not entitled to relitigate his New York suspension:

> [The SMBO argues that] a Board hearing cannot be used to re-litigate a prior administrative decision, a proposition with which Dr. Yoonessi has agreed throughout the hearing process. With that said, Dr. Yoonessi did not attempt to re-litigate the underlying action in New York. Instead, the crux of Dr. Yoonessi's argument in this regard is that he was prohibited from meaningfully presenting or addressing mitigating or exonerating evidence concerning the facts that served as the

> basis for both the New York Board's allegations and the Board's permanent denial of the restoration of his Ohio application.

(Reply Brief of Appellant at 8-9.) But the distinction that Yoonessi is trying to make here—the distinction upon which both of his assignments of error rest—does not withstand scrutiny. The only possible relevance of "mitigating or exonerating evidence concerning the facts" underlying the allegations in New York is to attack the basis of his New York suspension. Yoonessi does not dispute the existence of that suspension, nor does he dispute that the SMBO is justified in denying his application for reinstatement based on the existence of that suspension alone. He does not contend that he has been precluded from offering evidence of mitigation related to his activities subsequent to the New York suspension, nor does he contend that he has been precluded from offering evidence of subsequent activities separate and apart from those that formed the basis of his New York suspension that might justify the reinstatement of his license in Ohio. Instead, he wishes to admit evidence regarding the circumstances leading up to and surrounding the New York suspension with the sole goal of arguing that the SMBO should evaluate those circumstances differently than the NYMB did, and on that basis refuse to rely upon the New York suspension to disapprove his Ohio reinstatement.

{¶ 9} But it would insult judicial comity to force an administrative agency in a state considering reciprocal discipline to either completely ignore or, alternatively, to completely reexamine and reweigh the procedural and factual circumstances upon which discipline was originally imposed. It is beyond dispute that Ohio may take notice of the proceedings in New York and California, restate what those proceedings were in reference to and what factual determinations were reached, and examine how a similar case would be sanctioned in Ohio without probing whether New York and California reached the correct result, failed to consider relevant mitigating evidence, or imposed punishments that were too harsh. That is precisely what R.C. 4731.22(B)(22) authorizes.

{¶ 10} This court has affirmed trial court decisions in several similar cases based largely on the simple determination that the trial court did not abuse its discretion in finding that the SMBO's decisions were supported by reliable, probative, and substantial evidence. *See, e.g., Gross v. Ohio State Med. Bd.,* 10th Dist. No. 08AP-437, 2008-Ohio-6826 (surgeon was licensed in multiple states, and surgeon's Ohio practice was limited and placed on probationary status by the SMBO under R.C. 4731.22(B)(22) when the surgeon's

license to practice medicine in Colorado was permanently placed on inactive status); *Angerbauer v. State Med. Bd. of Ohio*, 10th Dist. No. 17AP-88, 2017-Ohio-7420 (SMBO order permanently denying doctor's application to practice in Ohio affirmed by trial court and on appeal as there was substantial, probative, and reliable evidence to support SMBO's finding that action taken by the state of Washington due to doctor's unprofessional conduct both 'limited' and imposed 'probation' on his license); *Edmands v. State Med. Bd. of Ohio*, 10th Dist. No. 16AP-726, 2017-Ohio-8215 (SMBO was authorized to permanently deny doctor's application for certificate to practice medicine where he had been reprimanded in West Virginia and his license in that state was on probation); and *Coniglio v. State Med. Bd. of Ohio*, 10th Dist. No. 07AP-298, 2007-Ohio-5018, ¶ 7 (SMBO properly disciplined Ohio and New York doctor who was denied license to practice in Nevada based solely on Nevada Board discipline, and even if Nevada Board's decision was "*based on something or nothing*, R.C. 4731.22 permits the State Medical Board of Ohio to discipline appellant * * * [and] [w]e, as an appellate court, are bound to follow R.C. 4731.22."). (Emphasis added.) We reach the same result here, and conclude that the trial court's decision was not an abuse of discretion. We therefore overrule Yoonesi's first assignment of error.

{¶ 11} In his second assignment of error, Yoonesi contends that his due process rights were violated because the SMBO's order denying his application was based on charges that were not included in his R.C. 119.07 notice of hearing, and that because this case was brought under R.C. 4731.22(B)(22), the so-called "bootstrap statute," any reliance on the circumstances and underlying determinations of the New York case necessarily results in a denial of his procedural due process rights.

{¶ 12} It is axiomatic that "[d]ue process entitles an individual to fair notice of the precise nature of the charges to be brought forth at a disciplinary proceeding." *Applegate v. State Med. Bd. of Ohio*, 10th Dist. No. 07AP-78, 2007-Ohio-6384, ¶ 23, citing *Althof v. Ohio State Bd. of Psychology*, 10th Dist. No. 05AP-1169, 2007-Ohio-1010, ¶ 19. But due process is not violated unless the individual is actually disciplined for activities not mentioned in the hearing notice. *Id.* (holding that failure of notice of hearing to mention an incident discussed at hearing "did not violate Applegate's due process rights because Applegate was not disciplined for the disputed misconduct").

{¶ 13} Yoonesi apparently believes that the SMBO's denial of his reinstatement was based on actions in New York that were both the precise subject of the New York suspension but were also not part of that suspension, which he refers to as the "underlying findings in the New York action." (Brief of Appellant at 8.) But the notice of hearing specifically relied upon R.C. 4731.22(B)(22) and both included and incorporated by reference copies of the 2002 New York license revocation, the 2013 New York denial of reinstatement, the 2003 California license revocation and petition denial, and the 2008 California denial of reinstatement. (*See* State's Hearing Ex. 1A). And the hearing officer's decision, adopted by the SMBO, rested on the legal conclusion that "[t]he 2002 New York Order, 2013 New York Denial, 2003 California Revocation, 2003 California Petition Denial, and 2008 California Denial, as described in Findings of Fact 2 through 5 above, individually and/or collectively" were " 'actions taken by an agency responsible for authorizing, certifying, or regulating an individual to practice a health care occupation or provide health care services' as that clause is used in R.C. 4731.22(B)(22)" and should be the basis of reciprocal discipline in Ohio. (Mar. 15, 2021 Report & Recommendation at 29, quoting 2003 California Board Order.) Because those actions were included in the notice and were the basis of both the hearing officer's recommendation and the SMBO's action, Yoonesi cannot establish a violation of his due process notice rights. *Compare...with Applegate* at ¶ 23. As the trial court correctly recognized, "[c]ontrary to [Yoonessi's] assertions otherwise, he was notified of the subject matter of the hearing and his due process rights were not violated." (Feb. 16, 2023 Decision & Entry at 21.) Accordingly, Yoonessi's second assignment of error lacks any merit and is overruled.

{¶ 14} For the foregoing reasons, we overrule Yoonessi's two assignments of error and his proposed supplemental assignment of error, and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL, P.J., and LELAND, J., concur.

_____