[Cite as *White v. State Med. Bd. of Ohio*, 2024-Ohio-1553.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Mark A. White, M.D.,                    :

        Appellant-Appellee,          :          No. 23AP-587
                                              (C.P.C. No. 22CV-3828)
v.                                      :

                                              (REGULAR CALENDAR)
State Medical Board of Ohio,             :

        Appellee-Appellant.          :

---

D E C I S I O N

Rendered on April 23, 2024

---

**On brief:** *Crabbe*, *Brown & James*, *Larry H. James*, and *Christopher R. Green*, for appellee. **Argued:** *Christopher R. Green*.

**On brief:** *Dave Yost*, Attorney General, *Katherine Bockbrader*, and *Melinda Snyder*, for appellant. **Argued:** *Katherine Bockbrader*.

---

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Appellant, State Medical Board of Ohio ("the board"), appeals from a judgment of the Franklin County Court of Common Pleas reversing an order of the board indefinitely suspending the medical license of appellee, Mark A. White, M.D., for at least one year. For the following reasons, we reverse the judgment of the trial court.

**I. Facts and Procedural History**

{¶ 2} White is a physician who has been licensed to practice medicine in Ohio since 1997. By notice of opportunity for hearing dated November 10, 2020, the board notified White that it proposed to take disciplinary action against his license to practice medicine. The board alleged White engaged in sexual misconduct with a patient, in violation of R.C.

4731.22(B)(6), 4731.22(B)(20), and Ohio Adm.Code 4731-26-02(A). White timely requested a hearing in response to the notice.

{¶ 3} A board hearing examiner held a hearing on the matter on July 29 and 30, 2021. To begin the hearing, White's counsel conceded that White engaged in sexual misconduct with Patient 1, as that term is defined in Ohio Adm.Code 4731-26-01. The evidence at the hearing detailed White's friendship with Patient 1 and the circumstances of the sexual misconduct. The board called White as a witness as if on cross-examination, and he testified to the following facts.

{¶ 4} White, born in 1957, received his license to practice medicine in 1997, and currently has approximately 3,000 patients for whom he provides medical care. In approximately 2012, White met Patient 1, who was 20 years old at the time, at a social gathering for gay African American men. Afterwards they began attending church group meetings for gay African American men, of which White was a member, and extensively discussed the challenges of being gay and lack of acceptance in parts of the African American community. They became very good friends, with White becoming somewhat of a mentor to Patient 1. White introduced Patient 1 to other older gay African American men, who understood these issues. White had his first sexual encounter with Patient 1 in November 2014, prior to Patient 1's first visit to White's medical office, which occurred on June 29, 2015, with Patient 1 seeking treatment for an acute cough.[1] White testified that he had a second sexual encounter with Patient 1, on or about September 4 to 7, 2015, which was while he was a patient. Patient 1's last visit to White's office was in May 2019, a couple months before Patient 1 committed suicide.

{¶ 5} White was questioned regarding Exhibit V, which he identified as a book that Patient 1 had sent to Wesley Williams, a mutual friend. White first reviewed the book in September or October 2020, and he could not believe Patient 1 would make such untrue statements relating to White. In questioning White, the board's counsel recited various passages from the book to elicit his response to those passages. White did not object to this line of questioning.

---

[1] During the board's preliminary investigation of White's misconduct, White indicated his first of two sexual encounters with Patient 1 was following Patient 1's first office visit. But after reviewing his personal journal, White was able to recall the timing of the events more accurately.

{¶ 6} White acknowledged his mistake in engaging in sexual conduct with a patient, and he expressed sorrow for Patient 1's untimely death. But White also stated he did not believe that his sexual relationship with Patient 1, concurrent with their physician and patient relationship, was harmful to Patient 1.

{¶ 7} White called four individuals to attest to his good character and reputation within the community. Wesley Williams testified that he was good friends with both White and Patient 1. He described White as a great person who is dedicated to his community and Patient 1 as an "impressive young man" in need of a mentor to accomplish his lofty goals. (July 29, 2021 Tr. Vol I at 109.) Attorney Charles Postlewaite testified to White's positive attributes, including his honesty, integrity, and concern for others. Postlewaite described White as someone involved and respected within his community, and he expressed concern at the harm that could result if White's license to practice medicine was suspended. Businessman, Ernest Sullivan, testified that White continued to serve minorities within Columbus even when that may not have been the most lucrative career path for him. Sullivan described White as a caring person who positively impacts his community. Bishop Melvin Griffin, a local minister, also attested to White's good character and reputation within the community.

{¶ 8} Following the hearing, on April 14, 2022, the hearing examiner issued a report and recommendation with detailed findings of fact, including the finding that White had sexual contact with Patient 1 when Patient 1 was under his care. Based on these factual findings, the hearing examiner concluded that White's conduct with Patient 1 violated R.C. 4731.22(B)(6), 4731.22(B)(20), and Ohio Adm.Code 4731-26-02. The hearing examiner also recommended the board suspend White's license for a minimum of one year, commencing 31 days following the effective date of the order, and fine him $6,000.

{¶ 9} White filed an objection to the hearing examiner's proposed order. He requested the opportunity to appear before the board to challenge the hearing examiner's recommendation that his license be suspended for a minimum of one year, commencing 31 days following the effective date of the order. He noted the practical difficulty of winding down his practice in 30 days, considering he has 3,000 patients, and he proposed, as an alternative punishment, surrendering his license one year after the order is filed. He did not, however, challenge any factual finding or conclusion of law of the hearing examiner.

The filing expressly states: "Respondent understands and respects the findings of the Hearing Examiner and accepts responsibility for his actions." (Apr. 19, 2022 Respondent Mark A. White's Obj. to Hearing Examiner's Report at 1.) In sum, White's objection challenged the hearing examiner's recommended penalty but not any finding of fact or conclusion of law.

{¶ 10} At the board's May 11, 2022 meeting, White and his counsel addressed the board. The board's meeting minutes reflect White's contrition for his conduct, and his concern that 30 days would be insufficient time to properly transfer the care of his patients to other physicians. The board's meeting minutes indicate that White's counsel, in challenging the penalty of a minimum year-long license suspension beginning 30 days after an order is filed, emphasized White's contributions to the community and the absence of any other infraction in his 25-year professional career. White's counsel reiterated the request, as made in his objections, that he be given one year to wind down his practice and then surrender his license. His counsel challenged the hearing examiner's finding that he did not have remorse, asserting his monotone voice and straight-forward manner may have led to this misperception. Otherwise, there is no indication that White, or his counsel, challenged any finding of fact or conclusion of law reached by the hearing examiner.

{¶ 11} After White and his counsel addressed the board, multiple board members stated their thoughts and concerns regarding the matter, specifically emphasizing the profound negative impact White's conduct had on Patient 1. In particular, board member Dr. Schottenstein noted that this case presents a good example for why sexual activity between a licensed physician and a patient is prohibited. He explained that the imbalance of power makes such activity inherently unacceptable as it is psychologically damaging to patients. The board voted to adopt the hearing examiner's report and recommendation, including the proposed suspension of White's medical license for a minimum of one year, commencing 31 days after the entry of the order. On May 11, 2022, the board mailed a copy of its order to White.

{¶ 12} On June 6, 2022, White filed an appeal from the board's order to the trial court. The next day, he requested an order staying the board's order, asserting likely hardship to him and his patients. The trial court granted the stay request. In support of his challenge to the board's order, White argued the board's order was unlawful because

the board considered evidence not admitted into the record, because the board disciplined him based on reasons not included in the violation notice, and because the board failed to consider his mitigation evidence. The trial court concluded the board violated White's due process rights because it considered evidence not admitted into the record, and because it disciplined him for reasons not charged in the notice of opportunity for hearing. On these bases, the trial court reversed the board's order and remanded the matter for further proceedings. Based on this disposition, the trial court did not analyze or resolve White's argument that the board's order was unlawful because it did not consider his mitigation evidence.

{¶ 13} The board timely appeals.

## II. Assignments of Error

{¶ 14} The board assigns the following two assignments of error for our review:

> [I.] The lower court erred in its interpretation of R.C. 119.07 and its holding that the Medical Board did not comply with R.C. 119.07 and violated Dr. White's due process rights by analyzing aggravating factors not expressly enumerated in the Notice of Opportunity for Hearing.

> [II.] The lower court erred in holding that the Board violated due process by considering evidence that the appellant failed to object to and that was not prejudicial.

## III. Standard of Review

{¶ 15} In reviewing an order of an administrative agency under R.C. 119.12, a common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110 (1980). "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. "Substantial" evidence is evidence with some weight; it must have importance and value. *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶ 16} The common pleas court's "review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." *Conrad* at 111. On questions of law, the common pleas court conducts a de novo review, exercising its independent judgment in determining whether the administrative order is " 'in accordance with law.' " *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993), quoting R.C. 119.12.

{¶ 17} An appellate court's review of an administrative decision is more limited. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). As to factual disputes, the appellate court is to determine only whether the common pleas court abused its discretion. *Id.*; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218 (1983). An abuse of discretion requires more than an error in judgment. To find an abuse of discretion, we must conclude that the trial court's decision was without a reasonable basis and clearly wrong. *Miracle Home Health Care, L.L.C. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 12AP-318, 2012-Ohio-5669, ¶ 18. On purely legal questions, however, an appellate court's review is plenary. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist.).

## IV. Discussion

{¶ 18} Because they involve interrelated issues, we discuss together the board's first and second assignments of error. In its first assignment of error, the board contends the trial court erred in concluding the board violated R.C. 119.07 by not including necessary information in the notice of opportunity for hearing. The board's second assignment of error asserts the trial court erred in finding the board violated White's due process rights in considering a document not admitted into evidence, Exhibit V. Both of these assignments of error have merit.

{¶ 19} As a preliminary matter, we note White, in objecting to the hearing examiner's report and recommendation, did not raise the issues later presented to the trial

court for review.  "Generally, a party waives the right to appeal an issue that could have been but was not raised in earlier proceedings. * * * This principle has been applied in appeals from administrative agencies." *MacConnell v. Ohio Dept. of Commerce*, 10th Dist. No. 04AP-433, 2005-Ohio-1960, ¶ 21 (when license applicant failed to object to evidentiary defects before the administrative tribunal, those defects could not be asserted as grounds for appeal).  Because White did not raise these issues in his objections, the board was not given the opportunity to address them.  Thus, White waived his arguments concerning the notice of opportunity for hearing and the consideration of Exhibit V.  And, even if not waived, the trial court erred in not finding White's arguments fail on the merits.

{¶ 20} Chapter 4731 of the Revised Code vests the board with broad authority to regulate the medical profession in Ohio and to discipline physicians for non-compliant conduct.  *Griffin v. State Med. Bd. of Ohio*, 10th Dist. No. 09AP-276, 2009-Ohio-4849.  This includes the authority to impose a wide range of sanctions, pursuant to R.C. 4731.22, ranging from reprimand to revocation.  "The discretion granted to the board in imposing a wide range of potential sanctions reflects the deference due to the board's expertise in carrying out its statutorily granted authority over the medical profession." *Demint v. State Med. Bd. of Ohio,* 10th Dist. No. 15AP-456, 2016-Ohio-3531, ¶ 63.   In setting the appropriate sanction for violations alleged and proven, the board may consider mitigating and aggravating circumstances, including uncharged misconduct.  *Macheret v. State Med. Bd. of Ohio*, 188 Ohio App.3d 469, 2010-Ohio-3483, ¶ 28 (10th Dist.).  *See Froehlich v. Ohio State Med. Bd.,* 10th Dist. No. 15AP-666, 2016-Ohio-1035, ¶ 31 (finding medical review board may consider aggravating circumstances, including uncharged misconduct, when considering the appropriate sanction against the physician); *Urban v. Ohio State Med. Bd.*, 10th Dist. No. 03AP-426, 2004-Ohio-104, ¶ 17 (noting the board may consider aggravating and mitigating circumstances in deciding on the appropriate penalty for physician misconduct).

{¶ 21} Pursuant to R.C. 119.07, the board must provide notice to a party and the notice "shall include the charges or other reasons for the proposed action, the law or rule directly involved, and a statement informing the party that the party is entitled to a hearing if the party requests it within thirty days of the time of service."  This statute is consistent with principles of due process.  It is axiomatic that "[d]ue process entitles an individual to

fair notice of the precise nature of the charges to be brought forth at a disciplinary proceeding." *Applegate v. State Med. Bd. of Ohio*, 10th Dist. No. 07AP-78, 2007-Ohio-6384, ¶ 23, citing *Althof v. Ohio State Bd. of Psychology*, 10th Dist. No. 05AP-1169, 2007-Ohio-1010, ¶ 19. But due process is not violated unless the individual is actually disciplined for activities not mentioned in the hearing notice. *Id.* "Thus, due process does not preclude a disciplinary body from considering uncharged misconduct in determining a suitable sanction." *Macheret* at ¶ 27.

{¶ 22} Here, the notice of opportunity for hearing provided to White stated the following reasons as bases for possible discipline:

> In the course of your practice, you undertook the treatment, provided care and/or prescribed medications to Patient 1, as identified in the attached Patient Key. (Key is confidential and shall be withheld from public disclosure.)
>
> On or about September 3, 2020, you admitted to a Board Investigator that you engaged in sexual conduct with Patient 1 on two occasions. You further stated that you first engaged in sexual conduct with Patient 1 on or about September 4 to 7, 2015, Labor Day weekend. You further stated that you again engaged in sexual conduct with Patient 1 in or around January 2017. The patient record documents that you provided medical care from on or about June 29, 2015 to May 14, 2019, to Patient 1 which was concurrent with the two times you acknowledged engaging in sexual conduct with the patient.

(Nov. 10, 2020 Notice of Opportunity at 1.)

{¶ 23} The notice further indicated that White's alleged conduct violated R.C. 4731.22(B)(6), 4731.22(B)(20), and Ohio Adm.Code 4731-26-02. Pursuant to R.C. 4731.22(B)(6), the board may discipline a licensee for the licensee's "departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established." And, pursuant to R.C. 4731.22(B)(20), the board also may discipline a licensee for violating any rule adopted by the board. As pertinent here, Ohio Adm.Code 4731-26-02(A), states "a licensee shall not engage in sexual misconduct with a patient." For the purpose of this rule, " '[s]exual misconduct' means conduct that exploits the licensee-patient relationship in a sexual way, whether verbal or physical, and may include the expression of thoughts,

feelings, or gestures that are sexual or that reasonably may be construed by a patient as sexual." Ohio Adm.Code 4731-26-01(H). This includes sexual interaction. *Id.* Thus, the notice informed White of the basis for the proposed action, including the alleged misconduct and the specific statutes and rule that the conduct violated.

**{¶ 24}** The board's violation findings align with this notice. Based on the evidence presented at the hearing, the hearing examiner found that White engaged in sexual activity with Patient 1 once during their physician-patient relationship. The hearing examiner concluded that White's conduct with Patient 1 violated R.C. 4731.22(B)(6), 4731.22(B)(20), and Ohio Adm.Code 4731-26-02. Based on this conclusion, the hearing examiner also recommended the board suspend White's license for a minimum of one year, commencing 31 days following the effective date of the order, and fine him $6,000. The board voted to adopt the hearing examiner's report and recommendation, including the proposed suspension of White's medical license for a minimum of one year, commencing 31 days after the entry of the order. Thus, the board only disciplined White for violations charged in the notice of intent—namely, for his conduct in violation of R.C. 4731.22(B)(6), 4731.22(B)(20), and Ohio Adm.Code 4731-26-02. Insofar as the board considered other facts and circumstances in determining the appropriate sanction, including further details of White's relationship with Patient 1, White's degree of remorse for his misconduct, and the harm to Patient 1, that consideration was within the board's discretion and did not demonstrate any deficiency in the notice of opportunity for hearing. *See Macheret, Froehlich,* and *Urban.* Thus, we agree with the board that the trial court erred in concluding the board violated R.C. 119.07 and due process principles by disciplining him for uncharged conduct.

**{¶ 25}** We also agree with the board that the trial court erred in concluding the board violated White's due process rights by considering an exhibit that had been excluded from evidence. Patient 1 sent Exhibit V, a book titled "Mante Means Courage," to Wesley Williams, who gave it to White after Patient 1's passing. Williams believed that Patient 1 had authored the book. At the hearing, White denied many of the statements relating to him made in the book. The board initially moved to admit Exhibit V into evidence but later withdrew this motion. In her report and recommendation, which was adopted by the

board, the hearing examiner quoted the following passage in Exhibit V regarding a sexual encounter between White and Patient 1:

> I was I'm embarrassed at myself and at my body. I couldn't look at Dr. White in the eyes, or anyone. Aside from feeling dirty, I wanted to go to sleep -- for I had not slept, but had been up, throughout the night, staring at the night, and at the walls, and listening to it, the night, and the walls, as they settled, into the earth, which I tried to do, settle into the couch. When I arrived at my dorm, when it was, perhaps, for the first time that day, morning, and I'd stepped out of the truck and around it and onto the sidewalk, and looked at Dr. White, somehow, and he'd grinned, like a robber, whom I could not take back my belongings from, and turned away from him, the robber, and swiped, and gone inside.

(Apr. 14, 2022 Report & Recommendation at 10-11.)

{¶ 26} White argued, and the trial court agreed, that the board violated his due process right by relying on contents of Exhibit V, particularly the above-quoted passage, in reaching its decision. The flaw in this reasoning is passages of Exhibit V, including the above-quoted passage, were read into the record during White's questioning. There was no objection to the recitation of these passages during White's questioning. And White does not allege that the hearing examiner relied on any passage of Exhibit V that was not read into the record. Although Exhibit V was not admitted into evidence in its entirety, no passage of that book read into the record was stricken or otherwise excluded from the record. *See State v. Blackburn*, 10th Dist. No. 88AP-73, 1988 Ohio App. LEXIS 4002, *10 (Sept. 29, 1988) ("although the trial court's ruling precluded admission of the exhibits, it had no effect on the testimony offered relative to those exhibits"). Thus, there was no error in the board citing those passages as part of its decision on the matter. Consequently, the trial court erred in concluding the board violated White's due process in relying on contents of Exhibit V.

{¶ 27} Based on the foregoing, we sustain the board's first and second assignments of error.

## V. Disposition

{¶ 28} Having sustained the board's first and second assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to that court for further proceedings consistent with law and this decision.

*Judgment reversed;*
*cause remanded.*

JAMISON and BOGGS, JJ., concur.

———————