[Cite as *Liu v. State Med. Bd. of Ohio*, 2025-Ohio-2205.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Liumei Liu, | : | |
| Appellant, | : | |
| | | No. 24AP-458 |
| v. | : | (C.P.C. No. 24CV-2327) |
| State Medical Board of Ohio, | : | (REGULAR CALENDAR) |
| Appellee. | : | |

D E C I S I O N

Rendered on June 24, 2025

**On brief:** *Dinsmore & Scholl, LLP, Omar Hazimah, Elizabeth Y. Collis*, and *Heidi W. Dorn*, for appellant. **Argued:** *Omar Hazimah.*

**On brief:** *Dave Yost*, Attorney General, *Kyle C. Wilcox, J. Andrew Fraser*, and *Katherine J. Bockbrader*, for appellee. **Argued:** *Katherine J. Bockbrader.*

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Liumei Liu, L.M.T (Licensed Massage Therapist), appeals the July 1, 2024 judgment of the Franklin County Court of Common Pleas affirming the March 13, 2023 order of the State Medical Board of Ohio ("Board") that permanently revoked Ms. Liu's license to practice massage therapy in Ohio. Ms. Liu is a naturalized U.S. citizen born in China, who first came to the United States in 2015 when she was 51 years old. But she had lived in the predominantly English-speaking U.S. territory Guam for the 10 years prior to her emigration and had owned her own relaxation massage studio there. (Respondent's Ex. A, R.C. 119.07 Written Statement at ¶ 2.) She currently lives with her son in Ottawa, Ohio. *Id.* at ¶ 1.

{¶ 2}   In July 2015, Ms. Liu took and successfully passed the Federation of State Massage Therapy Boards ("FSMTB") Massage and Bodywork Licensing Examination ("MBLEx") and received a passing score of 715.  *Id.* at ¶ 6.  She subsequently applied for and received massage therapy licenses in Florida, Texas, and Alabama.  *Id.* at ¶ 11.  Her Texas license is currently active, but her Florida and Alabama licenses are currently inactive/lapsed.  *Id.*

{¶ 3}   On July 9, 2018, Ms. Liu applied to be licensed as a massage therapist in Ohio. Her application included a Certificate of Education signed by Angela DeLeon, director of the Lincoln Institute of Body Therapy in Orange County, California, which stated that Ms. Liu had attended that institution's massage therapy program between April 1, 2015, and January 29, 2016.  The application also included an affidavit signed by Ms. DeLeon, stating that the information provided by the Lincoln Institute to the Board was true and accurate verification as to the credentialing of the school from the Bureau for Private Postsecondary Education in California, and a copy of Ms. Liu's MBLEx passing score.  *Id.* at ¶ 12.  She was issued a license to practice massage therapy in Ohio on September 12, 2018. (Dec. 4, 2023 Tr. of Proceedings at 20-25.)

{¶ 4}   At the time Ms. Liu submitted her application, the Board had no reason to question the validity of the information provided, but later, while investigating inconsistencies in the documentation provided by a different applicant who claimed to have studied at the Lincoln Institute, the Board discovered that the MBLEx results of several license applicants claiming to have attended the Lincoln Institute had been rescinded.  *Id.* at 25, 53-54.  The Board conducted an investigation of the Lincoln Institute and of all the applicants and licensees who had attended that school, and following that investigation, the Ohio licenses of all the Lincoln Institute students were revoked.  *Id.* at 24-25, 54-55.

{¶ 5}   As part of the investigation, Ms. Liu gave a deposition at the Board's offices on July 14, 2022.  The Board's hearing officer reviewed and summarized Ms. Liu's deposition as follows:

> Board Enforcement Attorney Marcie Pastrick asked Ms. Liu questions in English, and an interpreter was provided to translate the questions into Mandarin, Ms. Liu's native language. . . . When asked at the outset of the deposition if she could speak English, Ms. Liu responded, "Little bit."

At the deposition, Ms. Liu could not remember details of her massage therapy education, such as the name of the school she attended, the exact year she graduated, how long her program lasted, or whether the school was located in San Francisco, Los Angeles, or elsewhere in California. She could not remember if the school had one building or many buildings; nor if the school had only one level or more than one floor. Although she offered the name of one other student who told her to go to school there, she could not remember any other classmates' names, nor the types of massage techniques she learned.

. . .

When Ms. Liu was presented with her transcript, and with the literature from the Lincoln Institute showing pictures of the school and its instructors, she could not say if that was her transcript or the school she attended:

> Q. [By Ms. Pastrick:] Let's start with Exhibit 2. Is this your transcript (indicating)?
>
> A. [Ms. Liu's response, through the interpreter:][] Doesn't remember.
>
> Q. This says she graduated on January 29, 2016 (indicating). Is that correct?
>
> A. Doesn't remember.
>
> Q. Does this ring a bell, the 123 North Kodiak Street (indicating)?
>
> A. Doesn't remember.
>
> Q. Did she live in Anaheim?
>
> A. Doesn't remember.
>
> (EXHIBIT 1 MARKED FOR IDENTIFICATION)
>
> Q. We'll go with Exhibit 2 - Exhibit 1 (indicating). Lincoln Institute of Body Therapy, is this where she went to school?
>
> A. Doesn't remember.

. . .

Ms. Liu did not recognize the pictures of the room in the school, nor the pictures of Ms. DeLeon and the other instructors, and when she was asked if she knew any of those people, Ms. Liu, through the interpreter, responded, "[S]he hasn't met these two for sure, and this one, not sure (indicating). Maybe, maybe not."

. . .

When Ms. Liu was shown pictures of the Lincoln Institute, she

said that she could not remember if she had gone to school there:

> Q. [By Ms. Pastrick:] Do you think you went to this school at all?
>
> A. She says she doesn't know. She said she doesn't know.
>
> (EXHIBIT 3 MARKED FOR IDENTIFICATION)
>
> Q. I have one more question. Is this your school (indicating)?
>
> THE WITNESS: I don't know.
>
> Q. Or this (indicating)?
>
> A. She's not sure.
>
> THE WITNESS: I'm not sure.
>
> Q. She doesn't think so. So I'm going to make a statement. Let the record show that this is the photos on the Internet for the Lincoln Institute of Body Therapy. Okay.
>
> THE WITNESS: I'm so sorry, I'm too old. I'm so sorry.

. . .

Through the interpreter, Ms. Liu offered that she did not know if the school was real or not, but she maintained that she took the exam:

> She said that she doesn't -- doesn't know that, but that she was studying in California and took the exam in California. [. . .] She said the school is real or not she doesn't know, but she did -- took the federal exam.

. . .

When Ms. Liu was pressed on how she was able to pass the MBLEx if she could not read English, she implied that an instructor gave her the answers to multiple choice questions, which she then memorized:

> Q. [By Ms. Pastrick:] If you can't read English, how did you take the test?
>
> A. It's multiple choice, so she said she prepared, reading from the computer.
>
> Q. The exam, is it all written or does she have -- or did she have to perform any massages?
>
> A. Only the written test.

Q. And did she memorize the answers?

A. Yes.

Q. Did someone give her the answers before the test?

A. Okay. So when they prepare in the computer, the -- the answer, correct answer is under each question, so memorized that.

Q. How did she know the correct answer?

THE INTERPRETER: Because of the - when they prepare, read, the correct answer is marked out. It's the correct answer underneath the question.

Q. I don't understand. It sounds to me like somebody gave her the questions and said for Question 1 it's B, for Question 2 it's C. Is that what happened or -- you can ask her that.

A. So they prepare a lot more questions than they take in the exam, and when they prepare each question, they have the correct answer given.

Q. "They have the correct answer given"?

THE INTERPRETER: Yeah. They have a question, multiple choice, and the answer.

Q. Who is "they"?

A. The teacher provides them.

Q. Who was her teacher?

A. Nina.

Q. Last name?

A. Ni.

Q. Can you spell it?

A. N-i -- Nina Ni is Chinese last name, common last name. It's N-i, N as in Nancy, I. So the first name is the -- probably not her legal name. She says she does not know her real name. They all call her Nina.

Q. So before she took the exam, did she already know the answers?

THE INTERPRETER: She doesn't --

A. No. They -- they don't know what to appear -- what will be appearing on the exam, but they do know the answer for particular questions.

. . .

> At the time of the deposition, Ms. Liu said that she was operating her own massage business in Ottawa, Ohio, and that her clients were mostly American women. When she was asked how she communicates with them, Ms. Liu said that she was able to speak enough English to ask them where their pain points were, so that she could "do more" in those areas.

(Feb. 6, 2024 Report and Recommendation at 7-11.)

{¶ 6} As a result of its investigation and Ms. Liu's deposition, the Board proposed that it would take disciplinary action against her license. The Board sent Ms. Liu a hearing notice on April 12, 2023, and stated:

> On or about September 12, 2018, you received a license to practice massage therapy from the Board. On or about July 14, 2022, you attended a deposition at the offices of the Board. As part of your application submitted to the Board on or about July 9, 2018, you provided documents including a transcript from the Lincoln Institute of Body Therapy. At the deposition, an interpreter was present because you do not speak English well. During the deposition, you were asked details regarding the documentation you provided in your application and your massage therapy education at the Lincoln Institute of Body Therapy in Orange, California. During the deposition, you failed to recognize your student transcript, failed to remember when you graduated, failed to remember the name of the school which you reported to the Board that you attended, failed to remember the length of the training/education you attended to complete the massage therapy course and failed to identify the location of the school.

(Apr. 12, 2023 Notice of Opportunity for Hearing at 1.) Ms. Liu requested the opportunity for a hearing to contest these charges. Prior to the hearing and through her counsel, she filed a R.C. 119.07 written response to the Board's allegations, in which she averred:

> 14. On July 14, 2022, I was deposed by Board attorney Marie Pastrick, Esq. at the Medical Board. I attended the deposition without counsel. I was not familiar with the process and did not understand why I had been called before the Medical Board.
>
> 15. The Medical Board retained interpreter Ke Wang to attend the deposition. Ms. Wang attempted to translate the questions posed by the Board's attorney, Marcie Pastrick, from English to Mandarin Chinese. However, Ms. Wang

spoke very quickly and I often could not understand the questions or Ms. Wang's summary/translation of the questions. I became overwhelmed at the deposition and was unable to adequately respond to many of the questions. I responded to many questions by stating "I do not remember", as I did not understand the question.

16. I have reviewed the transcript from the deposition . . . and believe that many of my responses are inaccurate as I did not understand the questions as translated by the interpreter.

(Respondent's Ex. A, R.C. 119.07 Written Statement at ¶ 14-16.)

**{¶ 7}** Ms. Liu did not appear or testify before the hearing examiner and instead relied exclusively upon her attorney's arguments and her own written statement.

**{¶ 8}** The Board's attorney called two witnesses. Board Deputy Director of Licensure Joseph Turek testified that the Board opened an investigation into the Lincoln Institute that ultimately resulted in all the Ohio licenses issued to its students, other than Ms. Liu, being revoked. Moreover, he reported that an investigation had uncovered several issues in Ms. Liu's application materials. Turek testified that he contacted the FSMTB and was told Ms. Liu had reported to that body that she had attended the Hopewell Career Institute for her massage therapy education, not the Lincoln Institute. (Tr. of Proceedings at 27-29.) Moreover, he confirmed that documents Ms. Liu provided to the Board in support of her license contained contradictory information—for example, her application included a Certificate of Education purportedly signed by the director of the Lincoln Institute, certifying that Ms. Liu had attended the Lincoln Institute from April 1, 2015, to January 29, 2016, and she had completed 750 hours of instruction. (*See* State's Ex. 1 at 9.) But she also submitted a transcript, which was also purportedly signed by the director of the Lincoln Institute, that stated she attended during those same dates but had completed 825 hours of course work. *Id.* at 12. Yet another document purported to be a certificate signed by the director of the Lincoln Institute was dated January 10, 2015, and stated that Ms. Liu had completed the massage therapy program consisting of 500 hours of training, even though Ms. Liu's own application documents stated that she did not begin her training until April of 2015—some four months later. (*See* State's Ex. 5; *see also* Tr. of Proceedings at 25-27.)

{¶ 9}   The Board's other witness, Enforcement Investigator Chris Fortner, testified that he had conducted the Board's investigation into the Lincoln Institute, which discovered that the Lincoln Institute was "permanently closed," but its students had been permitted to take the MBLEx until July 2017.   Correspondence from the California Massage Therapy Council ("CATMC") presented by Fortner at the hearing stated that the Lincoln Institute was being "un-approved" because it had

> offered to provide or has provided a transcript or transcripts without requiring full attendance at the school . . . failed to require students to attend all of the classes listed on their transcript . . . failed to require students to attend all of the hours listed on their transcript . . . engaged in fraudulent practices [by] . . . [o]ffering to provide a transcript without requiring full attendance . . . [c]reat[ed] fraudulent documents that do not accurately reflect the actual hours of class attended . . . [c]reat[ed] transcripts that do not accurately reflect the actual classes attended . . . [p]rovided hours credit for hours when students are not actually present at the school attending classes before a live instructor . . . [p]rovid[ed] hours of "clinical" credit for hours of massage provided by students that are not performed under the direct supervision of an instructor; and [c]reat[ed] fake documents for CAMTC certification, including attendance records.

(State's Ex. 4 at 4-5.)   Fortner also discovered that Ms. Liu's license application materials contained materials that had purported to describe the courses and faculty for the Lincoln Institute, but that those materials were inaccurate.   For example, although she did not claim to have studied with him, Liu's application materials represented that Kenneth Alpern, M.D., was an instructor in Advanced Anatomy and Kinesiology, Nutrition, and Integrated Health at the Lincoln Institute.   (State's Ex. 6 at 7.)   Fortner contacted Dr. Alpern via telephone and testified without objection that Dr. Alpern had stated that he had never been an instructor for any kind of massage therapy school and had no idea why he would be listed as such.   (Tr. of Proceedings at 61-62.)   Fortner was also able to contact Roni Y. Matsumoto, D.C., another alleged faculty member listed in the materials attached to Ms. Liu's application.   (State's Ex. 6 at 7.)   Fortner testified that he matched Ms. Matsumoto's picture in the Lincoln Institute brochure with a picture of her at the University of California that appeared in a Google search, spoke with Ms. Matsumoto, and she relayed to him that while she had been a chiropractor in the Orange, California area and an instructor at the

University of California, she had never been an instructor at a massage therapy school. (Tr. of Proceedings at 63.) She indicated that an unknown person had apparently copied her biographical material from the University's public website and reprinted it in the Lincoln Institute brochure. *Id.* at 63-64.

{¶ 10} Following the hearing, the hearing officer concluded:

> When combined with the other information about the Lincoln Institute that was gathered by the Board's staff in its investigation, the State has shown by at least a preponderance of the evidence that Ms. Liu did not attend a legitimate, 825-hour program at the Lincoln Institute that was taught by the instructors listed in the materials she submitted with her application. Although she may have passed the MBLEx by memorizing answers that were given to her by an "instructor" at the Lincoln Institute, there was an abundance of evidence presented at the hearing that she did not complete the massage therapy program she claimed to have completed in her application to the Board for a professional license. Because this was the basis upon which the Board granted her a license, I must conclude that Ms. Liu's license application contained false information.
>
> Since Ms. Liu did not attend the hearing to give any testimony, there is little information about the circumstances under which she came to California and pursued massage therapy as a career, but the evidence strongly suggests that she misrepresented her massage therapy education to the Board. Providing false information to the Board for purposes of acquiring a professional license is a very serious offense that belies the trust that the Board must be able to place in its licensees. For those reasons, a permanent revocation is recommended in this case.

(Report and Recommendation at 16.)

{¶ 11} Ms. Liu filed objections to the report and recommendation but after a subsequent vote, the Board approved it. (Mar. 20, 2024 Excerpt from the Draft Minutes of Mar. 13, 2024 at 2.) Liu then appealed to the trial court, arguing that the order was unsupported in the evidence and contrary to law, that the hearing officer had improperly shifted the burden of proof, and that she was not given proper and complete notice of the allegations against her. On July 1, 2024, the trial court issued a decision rejecting all three arguments affirming the Board's order:

> [A]t no time during the deposition did the Appellant raise any concerns with the validity of the translation, her ability to respond to questions, or Appellant's need to take any breaks due to stress.
>
> . . .
>
> There has been no evidence or argument that the sanction metered out to the Appellant was unlawful or not within the authority of the Board. Under the longstanding rule that this court may not modify a legal sanction that is supported by the facts, . . . this court will not change the sanction. Therefore, the Board's Entry of Order is supported by reliable, probative and substantial evidence and is in accordance with law.

(Citations omitted.) (July 1, 2024 Decision and Entry at 2, 8.)

**{¶ 12}** Ms. Liu has now appealed to this court, and her three assignments of error that mirror her arguments to the trial court.

> First Assignment of Error: The Court of Common Pleas erred in finding that the Order of the State Medical Board of Ohio was supported by reliable, probative, and substantial evidence demonstrating a violation of R.C. 4731.22(B)(5).
>
> Second Assignment of Error: The Court of Common Pleas erred in finding that the proper burden of proof was applied by the Hearing Examiner.
>
> Third Assignment of Error: The Court of Common Pleas erred in finding that due process was provided to the Appellant through notice of the allegations.

**{¶ 13}** When reviewing an order from the State Medical Board, a common pleas court is required to affirm the order if it is supported by reliable, probative, and substantial evidence, and is in accordance with law. R.C. 119.12(M). *See also Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). But an appellate court's review is even more limited than that of the trial court. It is not the function of the appellate court to examine the evidence; rather, it is to determine only if the trial court has abused its discretion, and absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for that of either the Board or the trial court but must instead affirm the trial court's judgment. *Pons* at 621. While it is possible that the misstatements and incorrect information Ms. Liu provided to the Board in connection with her application were innocent, and it is equally possible that the Lincoln Institute did provide Ms. Liu with

classes, those issues are largely beyond this court's review. As we held in *Yoonessi v. State Med. Bd.*, 2024-Ohio-169 (10th Dist.), "this court has affirmed trial court decisions in several similar cases based largely on the simple determination that the trial court did not abuse its discretion in finding that the [State Medical Board of Ohio's] decisions were supported by reliable, probative, and substantial evidence." *Yoonessi*, 2024-Ohio-169, ¶ 10 (10th Dist.). "The fact that an appellate court might arrive at a different conclusion than the board or common pleas court is immaterial to appellate review . . . [and] when reviewing the board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession." *Bhama v. State Med. Bd.*, 2009-Ohio-819, ¶ 27 (10th Dist.), citing *Pons*.

{¶ 14} In her first assignment of error, Ms. Liu argues that there is insufficient evidence to support the action against her license. Ms. Liu's license was revoked pursuant to R.C. 4731.22(B)(5), which provides:

> (B) Except as provided in division (P) of this section, the board, by an affirmative vote of not fewer than six members, shall, to the extent permitted by law, limit, revoke, or suspend a license or certificate to practice [for] . . .
>
> (5) Making a false, fraudulent, deceptive, or misleading statement . . . in securing or attempting to secure any license or certificate to practice issued by the board.
>
> As used in this division, "false, fraudulent, deceptive, or misleading statement" means a statement that includes a misrepresentation of fact, is likely to mislead or deceive because of a failure to disclose material facts, is intended or is likely to create false or unjustified expectations of favorable results, or includes representations or implications that in reasonable probability will cause an ordinarily prudent person to misunderstand or be deceived.

In *Bhama*, this court upheld the permanent denial of a licensure application to practice medicine and surgery in Ohio, under R.C. 4731.22(B)(5), based on the Board's allegation that the applicant had failed to specifically disclose that she had been terminated from two positions and had resigned from five others during her medical career in other states. At her hearing, the applicant in *Bhama* consistently indicated that she believed it was "implied" that when she changed positions, she either resigned or was terminated. *Id.* at ¶ 14-15. We held that while "in order to deny appellant a medical license for violating R.C.

4731.22(B)(5), the board was required to find that appellant intentionally misled the board," *see Rajan v. State Med. Bd.*, 118 Ohio App.3d 187 (10th Dist. 1997), we also observed that "[i]ntent 'may be inferred from the surrounding circumstances, e.g., as when a licensee clearly knows something, which he failed to disclose in response to a direct question.' " *Bhama* at ¶ 30, quoting *Haines v. State Med. Bd.*, 138 Ohio App.3d 762, 770 (10th Dist. 2000).

{¶ 15} We believe it is beyond dispute that there was reliable, probative, and substantial evidence of false information in Ms. Liu's license application materials. And during her investigatory deposition, Ms. Liu:

- was unable to identify the transcript she had submitted;
- could not recall the date that she claimed to have graduated;
- could not identify the building of the school she claimed to have attended;
- was not able to identify photos of any of the instructors whose classes she claimed to have taken.

Ms. Liu made no attempt to explain any of these answers in her hearing affidavit, other than to claim that she did not understand the questions and admit that "many of [her] responses are inaccurate." (Respondent's Ex. A, R.C. 119.07 Written Statement at ¶ 16.)

{¶ 16} Because the only other evidence regarding Ms. Liu's licensure application materials was the testimony of the witnesses describing the falsehoods identified in those materials, and because Ms. Liu did not appear at the hearing to offer any rebuttal or alternative response, the Board was left with little choice but to conclude that Ms. Liu bore some responsibility for the falsehoods. On appeal, the only question for us to resolve is whether the trial court acted within its discretion in concluding that there was reliable, probative, and substantial evidence that those misrepresentations were intentional, as this court has held they must be. In view of the deference that must be given to the Board's credibility determinations, we do not believe that Ms. Liu met her appellate burden to show that the trial court abused its discretion by concluding that the Board properly inferred Ms. Liu's intent to mislead from all the facts before it.

{¶ 17} In her second assignment of error, Ms. Liu argues a similar point. She contends that the hearing officer erred by applying the wrong burden of proof and that the Board required her to produce credible evidence that she did not provide false information in her application. Although the hearing officer accurately found that "Ms. Liu did not

attend the hearing on December 4, 2023 and did not provide any testimony or any credible evidence that would explain the discrepancies between the information in her application and the information she provided in her deposition," that finding does not shift the burden of proof. (Report and Recommendation at 14.) Indeed, the Board had already met its burden of proof when it demonstrated, unequivocally, that there were falsehoods in Ms. Liu's application materials. And Ms. Liu does not dispute that her application materials contained numerous inaccurate statements; instead, she insists that any mistakes were innocent. But because the intent to mislead may be—and indeed frequently must be—inferred from the surrounding facts, in the absence of any other explanation, it was within the Board's authority to adopt the hearing officer's view of the evidence. And we cannot say that the trial court abused its discretion by rejecting Ms. Liu's bare statement that she was blameless.

{¶ 18} Finally, in her third assignment of error, Ms. Liu argues that the notice of hearing was insufficiently specific and violated her right to due process under the governing statutes. This court has repeatedly rejected similar claims in the recent past. *See*, *e.g.*, *Yoonessi*, 2024-Ohio-169, at ¶ 12-13 (10th Dist.); *White v. State Med. Bd.*, 2024-Ohio-1553, ¶ 21 (10th Dist.); and *Banker v. State Med. Bd.*, 2024-Ohio-6009, ¶ 16 (10th Dist.), *discretionary appeal not allowed at* 2025-Ohio-1483. Moreover, a cursory review of the record reveals that in this case, the Board's notice was very specific, stating that Ms. Liu had "failed to recognize your student transcript, failed to remember when you graduated, failed to remember the name of the school which you reported to the Board that you attended, failed to remember the length of the training/education you attended to complete the massage therapy course and failed to identify the location of the school," amongst other claims. (Notice of Opportunity for Hearing at 1.) This assignment of error lacks merit.

{¶ 19} Accordingly, for all the foregoing reasons, Ms. Liu's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BOGGS and LELAND, JJ., concur.

————————————